Filed 7/6/15

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,

   Petitioner,

   v.

THE SUPERIOR COURT OF SAN FRANCISCO COUNTY,

   Respondent;

DARYL LEE JOHNSON,

   Real Party in Interest.

S221296

Ct.App. 1/5 A140767

(San Francisco County
Super. Ct. No. 12029482)

_____

CITY AND COUNTY OF SAN FRANCISCO ex rel. CITY AND COUNTY OF SAN FRANCISCO POLICE DEPARTMENT,

   Petitioner,

   v.

THE SUPERIOR COURT OF SAN FRANCISCO COUNTY,

   Respondent;

THE PEOPLE et al.,

   Real Parties in Interest.

Ct.App. 1/5 A140768

(San Francisco County
Super. Ct. No. 12029482)

_____

1

In *City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1 (*City of Los Angeles*),[1] we considered the interplay between the prosecution's constitutional duty under *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*) and its progeny, and statutory procedures by which the parties can seek discovery of information in confidential peace officer personnel records. We do so again.

*Brady*, *supra*, 373 U.S. 83, generally obligates the prosecution to disclose to the defense material evidence favorable to the defendant. Separately, the Legislature has enacted procedures to implement the decision of *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*), which allow criminal defendants to seek discovery from the court of potentially exculpatory information located in otherwise confidential peace officer personnel records. If a party bringing what is commonly called a *Pitchess* motion makes a threshold showing, the court must review the records in camera and disclose to that party any information they contain that is material to the underlying case. (See Evid. Code, §§ 1043, 1045.)

In this case, the City and County of San Francisco Police Department (police department), acting pursuant to procedures it has established, informed the district attorney that confidential personnel records of two peace officers who are potential witnesses might contain exculpatory information. Before us are two interrelated questions: (1) May the prosecution examine the records itself to determine whether they contain exculpatory information, or must it, like criminal defendants, follow the procedures the Legislature established for *Pitchess*

---

[1] Jeremy Brandon was the real party in interest in *City of Los Angeles*, *supra*, 29 Cal.4th 1, and some of the parties have given the case the shortened name *Brandon*. However, because its official name is *City of Los Angeles v. Superior Court*, we will instead call it the *City of Los Angeles* case. (See Cal. Style Man. (4th ed. 2000) § 1:1[A], p. 4.)

motions?  (2)  What must the prosecution do with this information to fulfill its *Brady* duty?

We conclude that the prosecution does not have unfettered access to confidential personnel records of police officers who are potential witnesses in criminal cases.  Rather, it must follow the same procedures that apply to criminal defendants, i.e., make a *Pitchess* motion, in order to seek information in those records.

Because criminal defendants and the prosecution have equal ability to seek information in confidential personnel records, and because such defendants, who can represent their own interests at least as well as the prosecution and probably better, have the right to make a *Pitchess* motion whether or not the prosecution does so, we also conclude that the prosecution fulfills its *Brady* duty as regards the police department's tip if it informs the defense of what the police department informed it, namely, that the specified records might contain exculpatory information.  That way, defendants may decide for themselves whether to bring a *Pitchess* motion.  The information the police department has provided, together with some explanation of how the officers' credibility might be relevant to the case, would satisfy the threshold showing a defendant must make in order to trigger judicial review of the records under the *Pitchess* procedures.

We reverse the judgment of the Court of Appeal, which reached different conclusions.

## I. PROCEDURAL BACKGROUND

We take this procedural background primarily from the opinion of the Court of Appeal.

The underlying criminal action charges real party in interest Daryl Lee Johnson (hereafter defendant) with domestic violence crimes.  Two San Francisco police officers are potentially important witnesses in the case.  In December 2013,

3

the prosecution filed a "Notice of Motion for Discovery of San Francisco Police Department Peace Officer Personnel Records Under *Brady* and Evidence Code sections 1043 and 1045[, subdivision ](e)." The motion asked the court to review in camera those officers' personnel records to determine whether they contain any material exculpatory information under *Brady*, *supra*, 373 U.S. 83, that is subject to disclosure. It also asked the court to "disclose to the District Attorney's Office and the defense any *Brady* material located in the personnel files, and . . . issue a protective order to protect the officers' statutory right of privacy in their personnel files."

Attached to the motion was a declaration by the prosecutor assigned to the case stating that the officers in question "are necessary and essential" prosecution witnesses. The police department had informed the prosecution that each officer had "material in his . . . personnel file that may be subject to disclosure under" *Brady*. The declaration stated that the records were in the "exclusive possession and control" of the police department and the district attorney did not have "actual" or "constructive" possession of the records. The prosecutor stated that, based on police department representations that the files contained potential *Brady* material, she believed the officers' personnel files contain "sustained allegations of specific *Brady* misconduct, reflective of dishonesty, bias, or evidence of moral turpitude. I believe on these case facts, and given the officers' roles, that such misconduct would be constitutionally material to the instant case in the *Brady* sense." The declaration further stated that the records "are material to the pending litigation in that they pertain to the credibility of a necessary and material prosecution witness, and could either impeach said witness or lead to evidence exonerating the defendant."

The prosecution's motion was filed in accordance with the police department's Bureau Order No. 2010-01 (Bureau Order), which established

4

department procedures for *Brady* disclosure of materials in employee personnel files.  (We have attached a copy of the Bureau Order as an appendix to this opinion.)  The Bureau Order explains that because "[r]epetitive requests by the District Attorney that the [Police] Department check employee personnel files of Department employees who may be witnesses create unnecessary paperwork and personnel costs . . . the Department is adopting a procedure under which the Department advises the District Attorney's Office of the names of employees who have information in their personnel files that may require disclosure under *Brady*.  The District Attorney's Office then makes a motion under Evidence Code 1043 and 1045 for *in camera* review of the records by the court."

The Bureau Order defines and gives examples of what may constitute "potential '*Brady* material.' "  It contemplates that the police department will identify potential *Brady* material on an ongoing basis and notify the district attorney's office on an ongoing basis that the personnel files for particular officers may contain *Brady* material.  When the police department becomes aware of potential *Brady* material regarding an officer, it creates a synopsis identifying the officer, the conduct, and the documents and information for potential disclosure.  A departmental " '*Brady* committee' " reviews the synopsis and, after notifying and permitting comment from the affected employee, recommends to the chief of police whether to disclose the employee's name to the district attorney.  The chief of police either approves or disapproves the recommendation.  If disclosure of an officer's name is approved, the district attorney is notified that the officer "has material in his or her personnel file that may be subject to disclosure under" *Brady*.

The Bureau Order contemplates that the district attorney "will create a list of Department employees who have potential *Brady* material in their personnel files," and that "[w]hen the District Attorney's office deems that a law

5

enforcement officer, identified by the Department as having possible *Brady* material in their personnel file, is a material witness in a pending case . . . the District Attorney shall make a '*Brady*' motion under Evidence Code Sections 1043 and 1045[, subdivision ](e) to the court for *in-camera* review of the records." The police department will not disclose material from officer personnel files without a trial court order for disclosure. The Bureau Order states, "The purpose of this procedure is to ensure that prosecutors and the defense receive sufficient information to comply with the constitutional requirements of *Brady* while protecting the legitimate privacy rights of law enforcement witnesses."

Defendant responded to the prosecutor's motion with his own "Motion for *Brady* discovery." He asked the court either to (1) conduct the requested review, (2) declare Penal Code section 832.7 (which limits review of peace officer personnel records) unconstitutional and order the police department to allow the prosecutor to review the officer personnel files for *Brady* material, or (3) dismiss the case due to the prosecutor's failure to comply with *Brady*. He stated his belief that he could not himself obtain disclosure of the material in the personnel files because he "knows only that those files contain potential *Brady* material, but [he] cannot move for it specifically because . . . he does not know what it is, or how it might impact his defense."

The police department expressed agreement with the prosecutor's position and urged the trial court to conduct the in camera review that the Bureau Order disclosure protocol contemplated.

On January 7, 2014, the superior court issued an order concluding that the prosecution had not made a sufficient showing to warrant court review of the records, that the *Pitchess* motion procedures do not apply to motions seeking review of peace officer personnel records under *Brady*, and that Penal Code section 832.7 is unconstitutional to the extent it bars the prosecution from gaining

access to officer personnel records in order to comply with *Brady*. The court denied the prosecution's motion for in camera *Brady* review, and ordered the police department "to give the District Attorney access to the personnel files of [the officers] 'so the prosecution can comply with its *Brady* mandate.' " The order stated, "Once the District Attorney has reviewed the personnel records, he will be able to fulfill his constitutional obligation to disclose to the Public Defender any information that is material under *Brady*. If a close question nonetheless remains as to whether information in a specific document or documents should be disclosed under *Brady*, the District Attorney will be able to make the threshold" showing necessary to justify court review of the documents.

The district attorney and the police department filed separate petitions for writ of mandate and/or prohibition in the Court of Appeal challenging the superior court's order. They asked the Court of Appeal to direct the superior court to conduct the requested review of the personnel records in camera and order disclosure of all *Brady* materials to both the prosecution and defense counsel, subject to a protective order. Defendant did not object to the requested relief, including trial court in camera review for *Brady* material.

The Court of Appeal stayed the superior court's order and the underlying criminal proceeding, consolidated the two writ proceedings, and ordered the superior court to show cause why the requested relief should not be granted. Ultimately, it held that, to satisfy its constitutional duty, the prosecution may and, before the court becomes involved, should itself review the personnel files of peace officer witnesses for *Brady* material. It directed the superior court to modify its January 7, 2014 order "to provide that, if the San Francisco District Attorney identifies any evidence in the San Francisco Police Department personnel files for [the officers] that should be disclosed to defendant Johnson under *Brady v.*

7

*Maryland*, *supra*, 373 U.S. 83, the District Attorney shall file a motion under Evidence Code section 1043 to obtain such disclosure."

We granted the police department's and district attorney's petitions for review and stayed the underlying criminal matter. Later, we requested the parties to brief the question of whether "the prosecution's obligation under *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*) and its progeny [would] be satisfied if it simply informs the defense of what the police department has informed it (that the two officers' personnel files might contain *Brady* material), which would allow the defense to decide for itself whether to seek discovery of that material pursuant to statutory procedures."

## II. DISCUSSION

### A. Background

Under *Brady*, *supra*, 373 U.S. 83, and its progeny, the prosecution has a constitutional duty to disclose to the defense material exculpatory evidence, including potential impeaching evidence. The duty extends to evidence known to others acting on the prosecution's behalf, including the police. (*Kyles v. Whitley* (1995) 514 U.S. 419, 437; *People v. Whalen* (2013) 56 Cal.4th 1, 64 [because a criminalist "participated in the investigation of the . . . murder and was employed by an investigating agency, he was part of the prosecution team, and the prosecutor therefore had a constitutional duty to disclose exculpatory, material evidence in [his] possession regardless whether the prosecutor was personally aware of the existence of the evidence"]; *People v. Zambrano* (2007) 41 Cal.4th 1082, 1132 [the duty of disclosure "is not limited to evidence the prosecutor's office itself actually knows of or possesses, but includes 'evidence known to the others acting on the government's behalf in the case, including the police' "].) The duty to disclose "exists even though there has been no request by the

8

accused." (*People v. Salazar* (2005) 35 Cal.4th 1031, 1042; see *United States v. Agurs* (1976) 427 U.S. 97, 107.)  For *Brady* purposes, evidence is material if it is reasonably probable its disclosure would alter the outcome of trial.  (*People v. Lucas* (2014) 60 Cal.4th 153, 273-274; *City of Los Angeles*, *supra*, 29 Cal.4th at pp. 7-8.)

"There are three components of a true *Brady* violation:  The evidence at issue must be favorable to the  accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  (*Strickler v. Greene* (1999) 527 U.S. 263, 281-282.)

As a separate strand of law, "[i]n *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*), we recognized that a criminal defendant may, in some circumstances, compel the discovery of evidence in the arresting law enforcement officer's personnel file that is relevant to the defendant's ability to defend against a criminal charge.  'In 1978, the California Legislature codified the privileges and procedures surrounding what had come to be known as "*Pitchess* motions" . . . through the enactment of Penal Code sections 832.7 and 832.8 and Evidence Code sections 1043 through 1045.' "  (*People v. Mooc* (2001) 26 Cal.4th 1216, 1219-1220 (*Mooc*).)  "Traditionally, *Pitchess* motions seek information about past complaints by third parties of excessive force, violence, dishonesty, or the filing of false police reports contained in the officer's personnel file."  (*Rezek v. Superior Court* (2012) 206 Cal.App.4th 633, 640.)

Penal Code section 832.7, subdivision (a), provides that "[p]eace officer . . . personnel records," which are defined in Penal Code section 832.8, are generally confidential and may not be disclosed except pursuant to procedures established in the Evidence Code.  Evidence Code sections 1043 and 1045 establish the procedures.  The party seeking discovery must file a written motion with service

on the governmental agency having custody of the records sought.  (Evid. Code, § 1043, subd. (a).)  The motion must describe the type of records or information sought and include an affidavit showing good cause for the discovery, which explains the materiality of the information to the subject of the pending litigation and states on reasonable belief that the governmental agency has the records or information.  (Evid. Code, § 1043, subd. (b); see *City of Los Angeles*, *supra*, 29 Cal.4th at p. 9.)

We have described the process employed when a criminal defendant brings the motion.  "If the trial court concludes the defendant has fulfilled these prerequisites and made a showing of good cause, the custodian of records should bring to court all documents 'potentially relevant' to the defendant's motion.  [Citation.]  The trial court 'shall examine the information in chambers' (Evid. Code, § 1045, subd. (b)), 'out of the presence and hearing of all persons except the person authorized [to possess the records] and such other persons [the custodian of records] is willing to have present' (*id*., § 915, subd. (b); see *id*., § 1045, subd. (b) [incorporating *id*., § 915]).  Subject to statutory exceptions and limitations, . . . the trial court should then disclose to the defendant 'such information [that] is relevant to the subject matter involved in the pending litigation.' (*Id*., § 1045, subd. (a).)" (*Mooc*, *supra*, 26 Cal.4th at p. 1226.)

These procedures "are based on the premise that evidence contained in a law enforcement officer's personnel file may be relevant to an accused's criminal defense and that to withhold such relevant evidence from the defendant would violate the accused's due process right to a fair trial.  *Pitchess* and Evidence Code sections 1043 through 1047 also recognize that the officer in question has a strong privacy interest in his or her personnel records and that such records should not be disclosed unnecessarily.  Accordingly, both *Pitchess* and the statutory scheme codifying *Pitchess* require the intervention of a neutral trial judge, who examines

10

the personnel records in camera, away from the eyes of either party, and orders disclosed to the defendant only those records that are found both relevant and otherwise in compliance with statutory limitations.  In this manner, the Legislature has attempted to protect the defendant's right to a fair trial and the officer's interest in privacy to the fullest extent possible."  (*Mooc*, *supra*, 26 Cal.4th at p. 1227.)

"The relatively relaxed standards for a showing of good cause under [Evidence Code] section 1043, subdivision (b) — 'materiality' to the subject matter of the pending litigation and a 'reasonable belief' that the agency has the type of information sought — insure the production for inspection of all potentially relevant documents."  (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 84.)

Although both *Brady*, *supra*, 373 U.S. 83, and its progeny, and the statutory *Pitchess* procedures employ the terms "material" or "materiality" in describing what must be disclosed, these words are not used in the same way.  Under *Brady*, evidence is "material" only if it is reasonably probable a prosecution's outcome would have been different had the evidence been disclosed.  (*City of Los Angeles*, *supra*, 29 Cal.4th at pp. 7-8.)  By contrast, "[u]nder *Pitchess*, a defendant need only show that the information sought is material 'to the subject matter involved in the pending litigation.'  ([Evid. Code,] § 1043, subd. (b)(3).)  Because *Brady*'s constitutional materiality standard is narrower than the *Pitchess* requirements, any [information] that meets *Brady*'s test of materiality necessarily meets the relevance standard for disclosure under *Pitchess*.  ([Evid. Code,] § 1045, subd. (b).)"  (*Id.* at p. 10.)

"This procedural mechanism for criminal defense discovery, which must be viewed against the larger background of the prosecution's constitutional obligation to disclose to a defendant material exculpatory evidence so as not to infringe the

11

defendant's right to a fair trial [citations], is now an established part of criminal procedure in this state." (*Mooc, supra,* 26 Cal.4th at pp. 1225-1226.)

With these principles as background, we will first consider whether, as the Court of Appeal held, the prosecutor may always review the confidential personnel records of police officers who are witnesses in a criminal case to determine whether the records contain *Brady* material. Then we will examine the prosecution's exact obligation under *Brady* with regard to personnel records.

## B. Whether the Prosecution Has Direct Access to Confidential Personnel Records

Penal Code section 832.7, subdivision (a), provides as relevant: "Peace officer or custodial officer personnel records . . . , or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code. This section shall not apply to investigations or proceedings concerning the conduct of peace officers or custodial officers, or an agency or department that employs those officers, conducted by a grand jury, a district attorney's office, or the Attorney General's office."[2]

Consistent with a recognition that one legislative purpose in establishing these procedures was to protect the officers' privacy interests "to the fullest extent possible" (*Mooc, supra,* 26 Cal.4th at p. 1227), we have said that this provision requires the prosecution, as well as the defendant, to comply with the *Pitchess* procedures if it wishes to obtain information from confidential personnel records.

---

[2]     Although Penal Code section 832.7, subdivision (a), specifically cross-references Evidence Code sections 1043 and 1046, we have generally read the cross-reference as including Evidence Code section 1045. (E.g., *City of Los Angeles, supra,* 29 Cal.4th at pp. 9-11.)

12

(*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1046 (lead opn.).)**3** "Absent such compliance, . . . peace officer personnel records retain their confidentiality vis-a-vis the prosecution." (*Alford*, at p. 1046.) In *Alford*, we held that, when the defendant makes a *Pitchess* motion, the prosecution does not automatically receive whatever information the court discloses to the defendant. (*Id*. at pp. 1043-1046.) We explained that the *Pitchess* procedure is "in essence a special instance of third party discovery," and that in a *Pitchess* hearing, "the district attorney prosecuting the underlying criminal case represents neither the custodian of records nor their subject, and thus has no direct stake in the outcome." (*Id*. at p. 1045.) Although recognizing that "the prosecution itself remains free to seek *Pitchess* disclosure," we found no "statutory authority to compel the defense or the trial court to share with the prosecution the fruits of a successful *Pitchess* motion." (*Id*. at p. 1046; see *Mooc*, *supra*, 26 Cal.4th at p. 1227 [the *Pitchess* statutory scheme requires a neutral judge to examine the records in camera "away from the eyes of either party"].)

The Courts of Appeal have consistently held that the prosecution does not have access to confidential personnel records absent compliance with the *Pitchess* procedures. (*Rezek v. Superior Court*, *supra*, 206 Cal.App.4th at p. 642; *Becerrada v. Superior Court* (2005) 131 Cal.App.4th 409, 415; *People v. Gutierrez* (2003) 112 Cal.App.4th 1463, 1475; *Abatti v. Superior Court* (2003)

---

**3** Justice Werdegar's lead opinion in *Alford v. Superior Court*, *supra*, 29 Cal.4th 1033, received only three signatures. However, Justice Moreno, who disagreed with another part of the lead opinion, agreed with the portion of the lead opinion we are discussing, thus forming a majority for that portion. (*Id*. at p. 1057 (conc. & dis. opn. of Moreno, J.).) All further citations to the *Alford* case are to the lead opinion.

112 Cal.App.4th 39, 56; *People v. Superior Court (Gremminger)* (1997) 58 Cal.App.4th 397, 404-407.)

The Court of Appeal in this case concluded that the prosecution does have the right to review personnel records of police officer witnesses for *Brady* material without complying with the *Pitchess* procedures, although the prosecution would have to comply with those procedures, and receive judicial approval, before it could turn over to the defense any *Brady* material it found. It concluded that Penal Code section 832.7, subdivision (a), does not bar such review for two reasons. First, it believed that prosecutorial review of the records without more would not constitute " 'disclos[ure] in any criminal or civil proceeding' " of the records under that subdivision. Second, it believed the exception for investigations permits such review. We disagree.

Penal Code section 832.7, subdivision (a), states that police officer personnel records are "confidential." It permits disclosure by use of the *Pitchess* procedures but otherwise provides only one exception to the confidentiality requirement — the exception for investigations. This exception indicates that the Legislature considered the range of situations in which prosecutorial need justifies direct access to peace officer personnel records, and it decided that those situations should be limited to "investigations or proceedings concerning the conduct of peace officers or custodial officers" (Pen. Code, § 832.7, subd. (a)), and does not extend to this context.

Contrary to the Court of Appeal's view, the exception for investigations does not apply here. Black's Law Dictionary defines "investigation" as "[t]he activity of trying to find out the truth about something, such as a crime, accident, or historical issue; esp., either an authoritative inquiry into certain facts, as by a legislative committee, or a systematic examination of some intellectual problem or empirical question, as by mathematical treatment or use of the scientific method."

14

(Black's Law Dict. (10th ed. 2014) p. 953, col. 2.) Checking for *Brady* material is not an investigation for these purposes. A police officer does not become the target of an investigation merely by being a witness in a criminal case.

"A law enforcement officer's personnel record will commonly contain many documents that would, in the normal case, be irrelevant to a *Pitchess* motion, including those describing marital status and identifying family members, employment applications, letters of recommendation, promotion records, and health records." (*Mooc*, *supra*, 26 Cal.4th at p. 1229.) Treating such officers as the subject of an investigation whenever they become a witness in a criminal case, thus giving the prosecutor routine access to their confidential personnel records, would not protect their privacy interests "to the fullest extent possible." (*Id*. at p. 1227.)

The Court of Appeal relied heavily on *Michael v. Gates* (1995) 38 Cal.App.4th 737 for its conclusion. That case merely held that a governmental agency may allow its own attorney to review personnel records in its possession in some situations without complying with the *Pitchess* procedures. It does not stand for the proposition that the prosecution, which does not represent the agency, may routinely review those records. (See discussion in *People v. Superior Court (Gremminger)*, *supra*, 58 Cal.App.4th at pp. 405-406.)

Moreover, as discussed *post*, permitting prosecutors routine access to personnel records is not necessary to protect defendants' due process right to obtain potentially exculpatory evidence. The *Pitchess* procedures the Legislature established long ago can protect defendants' interests without unduly infringing on police officers' privacy interests.

Accordingly, we conclude that prosecutors, as well as defendants, must comply with the *Pitchess* procedures if they seek information from confidential personnel records.

15

## C. The Scope of the Prosecutor's *Brady* Obligation Regarding Confidential Personnel Records

When the police department informed the district attorney that the officers' personnel records might contain *Brady* material, the prosecution had a duty under *Brady*, *supra*, 373 U.S. 83, to provide this information to the defense. No one disputes that. The question before us is whether the obligation goes beyond that.

Defendant argues that the district attorney has an obligation under *Brady* to provide material exculpatory information possessed by any member of the prosecution team, including the police department. The district attorney and police department respond that although in general the prosecutor's obligation to provide *Brady* material extends to what the police know, the obligation extends only to what the police know *about the specific case* and does not go so far as to include confidential personnel records the police department maintains in its administrative capacity. We need not resolve this dispute, because we conclude instead that the prosecution has no *Brady* obligation to do what the defense can do just as well for itself.

The purpose behind the *Brady* rule is "avoidance of an unfair trial to the accused" (*Brady*, *supra*, 373 U.S. at p. 87) or, stated slightly differently, "to ensure that a miscarriage of justice does not occur" (*United States v. Bagley* (1985) 473 U.S. 667, 675). In light of this purpose, the high court has made clear that one element of a *Brady* violation is that "evidence must have been suppressed by the State, either willfully or inadvertently." (*Strickler v. Greene*, *supra*, 527 U.S. at p. 282.) If the prosecution informs the defense of what it knows regarding information in confidential personnel records, and the defense can seek that information itself, no evidence has been suppressed.

"[T]he prosecutor had no constitutional duty to conduct defendant's investigation for him. Because *Brady* and its progeny serve 'to restrict the

16

prosecution's ability to suppress evidence rather than to provide the accused a right to criminal discovery,' the *Brady* rule does not displace the adversary system as the primary means by which truth is uncovered. (*United States v. Martinez-Mercado* (5th Cir. 1989) 888 F.2d 1484, 1488.) Consequently, 'when information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no *Brady* claim.' (*United States v. Brown* (5th Cir. 1980) 628 F.2d 471, 473; see *United States v. Stuart* (8th Cir. 1998) 150 F.3d 935, 937 ["Evidence is not suppressed if the defendant has access to the evidence prior to trial by the exercise of reasonable diligence."]; *United States v. Slocum* (11th Cir. 1983) 708 F.2d 587, 599.)" (*People v. Morrison* (2004) 34 Cal.4th 698, 715; see *People v. Zambrano*, *supra*, 41 Cal.4th at p. 1134.)

As we have explained, the prosecution and the defense have equal access to confidential personnel records of police officers who are witnesses in a criminal case. Either party may file a *Pitchess* motion, and either party must comply with the statutory procedures to obtain information in those records. Because a defendant may seek potential exculpatory information in those personnel records just as well as the prosecution, the prosecution fulfills its *Brady* obligation if it shares with the defendant any information it has regarding whether the personnel records contain *Brady* material, and then lets the defense decide for itself whether to file a *Pitchess* motion. In this case, this means the prosecution fulfilled its obligation when it informed defendant of what the police department had told it, namely, that the personnel records of the officers in question might contain *Brady* material, and that the officers are important witnesses.

Numerous federal decisions have made clear that if the prosecution provides the defense with, or if the defense otherwise has, sufficient information to obtain the evidence itself, there is no *Brady* violation. (*Amado v. Gonzalez* (9th

17

Cir. 2014) 758 F.3d 1119, 1137 ["defense counsel cannot ignore that which is given to him or of which he otherwise is aware"].)  An oft-cited case is *U.S. v. Dupuy* (9th Cir. 1985) 760 F.2d 1492, where the prosecutor determined that certain notes that she had promised would remain confidential contained potential *Brady* material.  Rather than disclose the information directly to the defendant, she "took her dilemma to the trial judge" and discussed the situation with him.  (*Id*. at p. 1501.)  Although the appellate court faulted what the trial judge ultimately did, it found the prosecutor had acted in accordance with her *Brady* duty.  "By submitting the issue to the judge, the prosecutor satisfied her duty to disclose exculpatory material."  (*Ibid*.)  It explained that "[s]ince suppression by the Government is a necessary element of a *Brady* claim, [citation], if the means of obtaining the exculpatory evidence has been provided to the defense, the *Brady* claim fails."  (*Id*. at p. 1501, fn. 5.)

Several cases have cited *U.S. v. Dupuy*, *supra*, 760 F.2d 1492, in finding no *Brady* violation when the defense had the ability to obtain the exculpatory evidence for itself.  (*U.S. v. Bond* (9th Cir. 2009) 552 F.3d 1092, 1097 [no *Brady* violation where the government provided the defendant "with the information needed to acquire all trial testimony, and provided him with the essential factual data to determine whether the witness' testimony might be helpful"]; *U.S. v. Bracy* (9th Cir. 1995) 67 F.3d 1421, 1428-1429 [no *Brady* violation when the government "provided all the information necessary for the defendants to discover the alleged *Brady* material on their own, so the government was not guilty of suppressing any evidence favorable to [a defendant]"]; *U.S. v. Aichele* (9th Cir. 1991) 941 F.2d 761, 764 ["When, as here, a defendant has enough information to be able to ascertain the supposed *Brady* material on his own, there is no suppression by the government."].)

18

The high court has held that when confidential records might contain exculpatory material, the trial court's in camera review of those records, followed by disclosure to the defense of any *Brady* material that review uncovers, is sufficient to protect the defendant's due process rights. In *Pennsylvania v. Ritchie* (1987) 480 U.S. 39 (*Ritchie*), the defendant, charged with molesting his minor daughter, sought disclosure of information in confidential reports prepared by a protective service agency that had investigated the case. The Pennsylvania Supreme Court had "held that defense counsel must be allowed to examine all of the confidential information, both relevant and irrelevant, and present arguments in favor of disclosure." (*Id*. at p. 59.) The high court disagreed that such access was required. "A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files." (*Ibid*.) Rather, the court found that the defendant's "interest (as well as that of the Commonwealth) in ensuring a fair trial can be protected fully by requiring that the [confidential] files be submitted only to the trial court for *in camera* review." (*Id*. at p. 60.) "An *in camera* review by the trial court will serve [the defendant's] interest without destroying the Commonwealth's need to protect the confidentiality of those involved in child-abuse investigations." (*Id*. at p. 61.)

A similar issue arose recently in California concerning confidential child welfare services records. (*J.E. v. Superior Court* (2014) 223 Cal.App.4th 1329.) In that case, the prosecutor reviewed the records and told the defense there was no *Brady* material. Believing that the records did contain exculpatory material, the defense moved the trial court to review them in camera, relying on "Welfare and Institutions Code section 827, which allows a juvenile court to release information from juvenile files to persons who are otherwise not authorized to access the confidential files." (*Id*. at p. 1332.) The appellate court held "that when a petitioner files a section 827 petition requesting that the court review a

19

confidential juvenile file and provides a reasonable basis to support its claim that the file contains *Brady* exculpatory or impeachment material, the juvenile court is required to conduct an in camera review." (*Id*. at p. 1333.) It found this requirement "supported by both policy and practical considerations." (*Id*. at p. 1334.)

The *J.E.* court explained that, "[a]s a practical matter, use of a [Welfare and Institutions Code] section 827 petition to secure *Brady* review can also serve to streamline the review process. A section 827 petition filed directly with the juvenile court bypasses the prosecutor as an intermediary and allows the court to make the disclosure decision in the first instance. This eliminates the need for the prosecution to request court permission for disclosure after its *Brady* review, and forestalls litigation brought by the defense over whether the prosecution has complied with its *Brady* obligations. Given that the Legislature has established the section 827 court petition process for access to juvenile files, it makes practical sense to allow use of this process to resolve *Brady* requests through a single procedure." (*J.E. v. Superior Court*, *supra*, 223 Cal.App.4th at p. 1339.)

We think the procedure used for confidential juvenile records in *Ritchie*, *supra*, 480 U.S. 39, and *J.E. v. Superior Court*, *supra*, 223 Cal.App.4th 1329, works just as well for confidential personnel records. "Similar to the circumstances in *Ritchie*, the records sought in this case are confidential but available by court order if they are material to the issues in the pending case. The difference between *Ritchie* and this case is that California has a legislatively established, exclusive method for gaining access to police officer personnel records for discovery of such exculpatory material — the so-called *Pitchess* procedures . . . ." (*Abatti v. Superior Court*, *supra*, 112 Cal.App.4th at p. 58.)

There are several advantages in these circumstances to having the defendant use the *Pitchess* procedures to acquire exculpatory material in

20

confidential personnel records rather than require the prosecution to do so. First, in some criminal cases the credibility of police officer witnesses might not be at issue and the defense might have no reason to bring a *Pitchess* motion. Whether to seek information in the officer's personnel records should be for the defense to decide in the first instance. If the defense does not intend to challenge an officer's credibility, it might reasonably choose not to bring a *Pitchess* motion. But the prosecution would not know this. Requiring the prosecution to seek the information on the defendant's behalf would essentially force the *Pitchess* procedures to be employed in most, if not all, criminal cases, including those in which the defense has no need of impeaching material. The *Pitchess* procedures should be reserved for cases in which officer credibility is, or might be, actually at issue rather than essentially mandated in all cases.

Additionally, in these circumstances, it makes sense to have the defense make the *Pitchess* motion for itself rather than force the prosecution to do so. The defense can seek the information at least as well as the prosecution can. Although the prosecution will often be able to anticipate what information the defense might want, and it might be able to present the defense position reasonably well to the court in a *Pitchess* motion, the defense will *know* what it wants, and will often be able to explain to a court what it is seeking and why better than could the prosecution.

Requiring the prosecution routinely to seek *Brady* material in personnel reports will also foster unnecessary duplicative proceedings. Whatever we say about the prosecution's *Brady* obligation cannot deprive the defense of the right to bring its own *Pitchess* motion. (See *Rezek v. Superior Court*, *supra*, 206 Cal.App.4th at p. 642.) The statutory *Pitchess* procedures apply to all parties. The defense is not required simply to trust that the prosecution has obtained for it all favorable information; it is entitled to investigate for itself. Even if the

21

prosecution brings a *Pitchess* motion, the defense might want to bring its own motion, something it unquestionably would have the right to do.

The prosecution also has a statutory right to bring a *Pitchess* motion and might want to do so sometimes for its own reasons. Indeed, at oral argument, the district attorney's office informed this court that it intended to continue making *Pitchess* motions even if we hold, as we do, that it is not constitutionally required to do so. That would be its own decision, and we cannot prohibit it from filing its own motions. We cannot even prohibit duplicative motions (by the prosecution and by the defense), although we can and do encourage the court and parties to coordinate any such duplicative motions. But we should not adopt rules that essentially force duplicative motions. Under the circumstances, it is more efficient simply to require the defense to employ the *Pitchess* procedures in the first instance if it wishes to obtain the information.

Finally, requiring the defense to file its own *Pitchess* motion would ensure that a record exists of what occurred. When a party brings a *Pitchess* motion, the trial court is required to keep a record of what it reviewed to provide meaningful appellate review. (*Mooc*, *supra*, 26 Cal.4th at p. 1228.) Using the *Pitchess* procedures rather than simply relying on the prosecution would thus forestall potential litigation over whether the prosecution had fulfilled its *Brady* obligations, i.e., had adequately represented the defense interests. (See *J.E. v. Superior Court*, *supra*, 223 Cal.App.4th at p. 1339.)

Understandably, defendant tells us he "is most concerned that defendants get the exculpatory materials secreted in police personnel records, to which they are entitled under *Brady*." But he argues that the *Pitchess* procedures are inadequate to protect his rights. We disagree. The *Brady* requirements and *Pitchess* procedures have long coexisted. "[T]he *Pitchess* scheme does not unconstitutionally trump a defendant's right to exculpatory evidence as delineated

22

in *Brady*. Instead, the two schemes operate in tandem." (*People v. Gutierrez*, *supra*, 112 Cal.App.4th at p. 1473.) We are confident that trial courts employing *Pitchess* procedures will continue to ensure that defendants receive the information to which they are entitled.

"Our state statutory scheme allowing defense discovery of certain officer personnel records creates both a broader and lower threshold for disclosure than does the high court's decision in *Brady*, *supra*, 373 U.S. 83. Unlike *Brady*, California's *Pitchess* discovery scheme entitles a defendant to information that will 'facilitate the ascertainment of the facts' at trial (*Pitchess*, *supra*, 11 Cal.3d at p. 536), that is, 'all information pertinent to the defense' [citation]." (*City of Los Angeles*, *supra*, 29 Cal.4th at p. 14.)

It is true, as defendant notes, that in some ways the *Pitchess* statutory scheme is potentially narrower than *Brady*'s requirements. For example, Evidence Code section 1045, subdivision (b)(1), places a five-year limitation on the disclosure of certain information. However, because the " ' "*Pitchess* process" operates in parallel with *Brady* and does not prohibit the disclosure of *Brady* information,' " all information that the trial court finds to be exculpatory and material under *Brady* must be disclosed, notwithstanding Evidence Code section 1045's limitations. (*City of Los Angeles*, *supra*, 29 Cal.4th at p. 14.)

Defendant is concerned that the required threshold showing is too high to expect him to be able to obtain exculpatory material from personnel records. On the contrary, a defendant must show good cause, but the burden is not high. "Good cause for discovery exists when the defendant shows both ' "materiality" to the subject matter of the pending litigation and a "reasonable belief" that the agency has the type of information sought.' (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 84.) A showing of good cause is measured by 'relatively relaxed standards' that serve to 'insure the production' for trial court

23

review of 'all potentially relevant documents.' (*Ibid.*)" (*People v. Gaines* (2009) 46 Cal.4th 172, 179.)  The defense only needs to demonstrate " 'a logical link between the defense proposed and the pending charge' and describe with some specificity 'how the discovery being sought would support such a defense or how it would impeach the officer's version of events.' " (*Id.* at p. 182, quoting *Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1021; see *Warrick*, at pp. 1024–1025 [the defense proposed may, "depending on the circumstances of the case, . . . consist of a denial of the facts asserted in the police report"].)  "This specificity requirement excludes requests for officer information that are irrelevant to the pending charges." (*Warrick*, at p. 1021.)  But if the defendant shows that the request *is* relevant to the pending charges, and explains how, the materiality requirement will be met.

Contrary to defendant's concern, to satisfy the "reasonable belief" requirement, he need not know what information is located in personnel records before he obtains the discovery.  Such a requirement would be impossible.  The required threshold showing does not place a defendant "in the Catch-22 position of having to allege with particularity the very information he is seeking." (*People v. Memro* (1985) 38 Cal.3d 658, 684.)  A reasonable belief that the agency has the type of information sought does not necessarily mean *personal* knowledge but may be based on a rational inference.  (*City of Santa Cruz v. Municipal Court*, *supra*, 49 Cal.3d at p. 90 [finding adequate to trigger in camera review defense counsel's declaration stating the " 'belie[f]' " that members of the public " 'may' " have filed complaints of use of excessive force by the officers in question].)  "It is equally apparent that the statute, in calling for a description of the 'type' of records sought to be disclosed, does not require the affiant to prove the existence of *particular* records. . . .  Clearly, an affidavit which describes the information sought as consisting of prior 'complaints of excessive force' by specific

24

officers . . . has specified a . . . 'type' of information within the plain meaning of the statute." (*Id*. at pp. 90-91.)

In this case, the police department has laudably established procedures to streamline the *Pitchess*/*Brady* process. It notified the prosecution, who in turn notified the defendant, that the officers' personnel records might contain *Brady* material. A defendant's providing of that information to the court, together with some explanation of how the officer's credibility might be relevant to the proceeding, would satisfy the showing necessary under the *Pitchess* procedures to trigger in camera review. Moreover, as we have noted, defendants are always permitted to file their own *Pitchess* motion even without any indication from the police department (through the prosecution) that the records might contain *Brady* material and, indeed, even if, hypothetically, the prosecution had informed them that the police department had said the records do *not* contain *Brady* material. The defense is not required simply to trust the prosecution or police department but may always investigate for itself.

For these reasons, we conclude that, under these circumstances, permitting defendants to seek *Pitchess* discovery fully protects their due process right under *Brady*, *supra*, 373 U.S. 83, to obtain discovery of potentially exculpatory information located in confidential personnel records. The prosecution need not do anything in these circumstances beyond providing to the defense any information it has regarding what the records might contain — in this case informing the defense of what the police department had informed it.

The superior court was concerned that requiring it to review personnel records routinely for exculpatory material, including *Brady* material, would be too onerous. Personnel records can be quite voluminous. One answer to this concern is that the burden has long existed. First this court in *Pitchess*, *supra*, 11 Cal.3d

25

531, and then the Legislature in codifying *Pitchess*, placed the burden on the courts.  It cannot be avoided.

But the burden need not be too great.  Judicial in camera review of records will be necessary only when a party brings a *Pitchess* motion, which might not occur unless the officer's credibility will, or might, actually be at issue.

Additionally, the court need not review everything in the personnel records, but only those portions that might be relevant.  "When a trial court concludes a defendant's *Pitchess* motion shows good cause for discovery of relevant evidence contained in a law enforcement officer's personnel files, the custodian of the records is obligated to bring to the trial court all 'potentially relevant' documents to permit the trial court to examine them for itself.  [Citation.]  A law enforcement officer's personnel record will commonly contain many documents that would, in the normal case, be irrelevant to a *Pitchess* motion . . . .  Documents clearly irrelevant to a defendant's *Pitchess* request need not be presented to the trial court for in camera review.  But if the custodian has any doubt whether a particular document is relevant, he or she should present it to the trial court.  Such practice is consistent with the premise of Evidence Code sections 1043 and 1045 that the locus of decisionmaking is to be the trial court, not the prosecution or the custodian of records.  The custodian should be prepared to state in chambers and for the record what other documents (or category of documents) not presented to the court were included in the complete personnel record, and why those were deemed irrelevant or otherwise nonresponsive to the defendant's *Pitchess* motion."  (*Mooc*, *supra*, 26 Cal.4th at pp. 1228-1229.)

The custodian of the records can assist the trial court by focusing the court's attention on what is relevant.  Typically, the defendant is seeking information that could be impeaching.  Such information should be readily apparent, especially when the defense specifies, as it should, the kind of

26

impeaching information it is seeking.  For all of these reasons, we believe that the *Pitchess* procedures can, and must, be employed in a way that ensures compliance with defendants' due process rights to receive exculpatory information without unduly burdening trial courts.

### III.  CONCLUSION

We reverse the judgment of the Court of Appeal and remand the matter to that court for further proceedings consistent with our opinion.

CHIN, J.

WE CONCUR:

CANTIL-SAKAUYE, C. J.
WERDEGAR, J.
CORRIGAN, J.
LIU, J.
CUÉLLAR, J.
KRUGER, J.

| BUREAU ORDER | BUREAU INDEX NUMBER | 2010-01 |
|---|---|---|
| | DATE ISSUED | 8/13/10 |
| | DATE REVISED | |

**SUBJECT:**
PROCEDURE FOR DISCLOSURE OF MATERIALS FROM LAW ENFORCEMENT PERSONNEL RECORDS IN COMPLIANCE WITH BRADY AND EVIDENCE CODES § 1043 ET SEQ

| ISSUED TO: | ISSUED BY: |
|---|---|
| ALL MEMBERS, OFFICE OF CHIEF OF STAFF | ASSISTANT CHIEF MORRIS TABAK |

## I. LEGAL BACKGROUND

A. **Peace officer and civilian personnel records.** Law enforcement personnel records are protected from disclosure by the statutory procedure required by Evidence Code Sections 1043-1047. (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531; Evid. Code §§ 1043-1047; Penal Code § 832.7.) Additional important protections regarding personnel records are contained in the Public Safety Officers Procedural Bill of Rights Act (Gov. Code §§ 3300 et seq.) and in the right to privacy under the California Constitution (Article I, § 1).

B. **Brady disclosures.** The District Attorney has a constitutional obligation under *Brady v. Maryland* (1963) 373 U.S. 83 to provide criminal defendants with material exculpatory evidence, including substantial evidence bearing on the credibility of prosecution witnesses. In California, the statutory procedure for discovery of police officer personnel records under Evidence Code 1043-1047 operates "in parallel" with the prosecution's obligation under *Brady*. (*City of Los Angeles v. Superior Court (Brandon)* (2002) 29 Cal.4th 1, 14.) Like the defense, the prosecution has no automatic right to discovery of peace officer personnel files; but must make a motion under Evidence Code Sections 1043 and 1045(e). (*Alford v. Superior Court* (2003) 29 Cal. 4th 1033, 1046.) Otherwise, the "prosecutor does not have the right to possess and does not have access to confidential peace officer files." (*People v. Gutierrez* (2004) 112 Cal.App.4th 1463, 1475.)

Repetitive requests by the District Attorney that the Department check employee personnel files of Department employees who may be witnesses create unnecessary paperwork and personnel costs for both the Department and the District Attorney's Office. Instead, the Department is adopting a procedure

under which the Department advises the District Attorney's Office of the names of employees who have information in their personnel files that may require disclosure under *Brady*. The District Attorney's Office then makes a motion under Evidence Code 1043 and 1045 for *in camera* review of the records by the court.

C.     Brady disclosure process. The Department and the District Attorney's Office have adopted a procedure by which the District Attorney's Office learns the identity of officers and civilian employees who may testify as a material witness in a prospective or pending case and who have information in their personnel files that may require disclosure under *Brady*. As set forth in Section IV.A., the District Attorney will file a *Brady* motion in that case to seek *in camera* review by the Court to determine if the personnel files contain *Brady* material. In response to the motion, the Department will gather *Brady* related personnel files and provide them to the Court. The Court will determine if the personnel files contain *Brady* material that must be provided to the defense. This approach reconciles a defendant's constitutional right to a fair trial with a law enforcement employee's right to confidentiality.

D.     District Attorney Policies. This procedure works in conjunction with policies issued by the District Attorney regarding *Brady* material.

E.     District Attorney's Authority Under Penal Code Section 832.7(a). Nothing in this Procedure for Disclosure shall apply to or in any way limit the District Attorney's authority pursuant to the exception set forth in Penal Code Section 832.7(a).

## II.     BRADY MATERIAL DEFINED

A.     Brady Material. The District Attorney is obligated to provide the defense in criminal cases with exculpatory evidence that is material to either guilt or punishment. (*Brady v. Maryland, supra*, 373 U.S. 83, 87.) Reviewing courts define "material" as follows: "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." (*People v. Roberts* (1992) 2 Cal.4th 271, 330.) The evidence must raise a "reasonable probability that, had [it] been disclosed to the defense, the result . . . would have been different [citation] – that is to say, a probability sufficient to undermine confidence in the outcome." (*In re Sassounian* (1995) 9 Cal. 4th 535, 543-544, n. 6.)

"Exculpatory" means favorable to the accused. This obligation includes "substantial material evidence bearing on the credibility of a key prosecution witness." (*People v. Ballard* (1991) 1

Cal.App.4th 752, 758.) Such impeachment evidence must disclose more than "minor inaccuracies." *(People v. Padilla* (1995) 11 Cal.4th 891, 929, overruled on other grounds, *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.)

The government has no *Brady* obligation to "communicate preliminary, challenged, or speculative information." *(United States v. Agurs* (1976) 427 U.S. 97, 109 fn. 16.) However, "the prudent prosecutor will resolve doubtful questions in favor of disclosure." *(Id.* at p. 108.) See also *Kyles v. Whitley* (1995) 514 U.S. 419, 439, which warns prosecutors against "tacking too close to the wind" in withholding evidence.

Examples of evidence that may constitute "Brady material" are as follows:

1.  The character of the witness for honesty or veracity or their opposites. (Evid. Code § 780 (e).)

2.  A bias, interest, or other motive. (Evid. Code § 780 (f).)

3.  A statement by the witness that is inconsistent with the witness's testimony. (Evid. Code § 780 (h).)

4.  Felony convictions involving moral turpitude. (Evid. Code § 788; *People v. Castro* (1985) 38 Cal.3d 301, 314.) Discovery of all felony convictions is required regarding any material witness whose credibility is likely to be critical to the outcome of the trial. (Penal Code § 1054.1 (d); *People v. Santos* (1994) 30 Cal.App.4th 169, 177.)

5.  Facts establishing criminal conduct involving moral turpitude, including misdemeanor convictions. *(People v. Wheeler* (1992) 4 Cal.4th 284, 295-297.)

6.  False reports by a prosecution witness. *(People v. Hayes* (1992) 3 Cal.App.4th 1238, 1245.)

7.  Pending criminal charges against a prosecution witness. *(People v. Coyer* (1983) 142 Cal.App.3d 839, 842.)

8.  Parole or probation status of a prosecution witness. *(Davis v. Alaska* (1974) 415 U.S. 308, 319; *People v. Price* (1991) 1 Cal.4th 324, 486.)

9. Evidence undermining an expert witness's expertise. *(People v. Garcia* (1993) 17 Cal.App.4th 1169, 1179-80.)

10. Evidence that a witness has a racial, religious or personal bias against the defendant individually or as a member of a group. *(In re Anthony P.* (1985) 167 Cal.App.3d 502, 507-510.)

B. Brady Material in Police Officer Personnel Files. For purposes of this procedure, potential "*Brady* material" in personnel files of police officers shall include any of the following:

1. A sustained finding of misconduct that comes within the definition of *Brady* material set forth in Section II. A. A sustained finding of misconduct occurs when (1) if charges are filed at the Chief's level, the Chief of Police finds a complaint to be sustained, and if there is an appeal to the Police Commission, the Commission has issued a decision on the appeal that finds a complaint to be sustained, or (2) if charges are filed with the Police Commission, the Police Commission finds a complaint to be sustained. If the Department has notified the District Attorney's office of *Brady* information and the officer later successfully appeals the finding of misconduct to a court, the Department shall provide the District Attorney's Office with a copy of the court's decision and the District Attorney's Office will reevaluate the matter.

2. Charges of misconduct filed with the Police Commission, or sustained by the Chief and on appeal to the Commission, when the charged misconduct comes within the definitions of *Brady* material set forth in Section II.A, (i) if the officer resigns or retires after the charges are filed and before the misconduct case is decided, or (ii) if the officer is still active and likely will be called as a witness in a criminal case before the misconduct case is decided. In either case, before the Department notifies the District Attorney's Office of the officer's name, the *Brady* Committee (described in Section III) must determine that the seriousness of the misconduct and strength of the evidence warrants notification under *Brady*. If the complaint of misconduct is later not sustained, the Department shall inform the District Attorney's Office and the District Attorney's Office will reevaluate the matter.

3. Any arrest, conviction or pending criminal charge for a felony or moral turpitude offense.

C.     Brady Material in Civilian Personnel Files. For purposes of this procedure, potential "*Brady* material" in personnel files of Department civilian employees shall include any of the following:

1.     Any finding of misconduct that comes within the definition of *Brady* material set forth in Section II.A.. A finding of misconduct occurs when (1) the Chief of Police has found a complaint to be sustained or (2) if a grievance has been filed, the employee has exhausted all remedies provided by Memorandum of Understanding that governs the employee and the complaint has been sustained. If the Department has notified the District Attorney's Office of *Brady* information and the civilian later successfully appeals the finding of misconduct to a court, the Department shall provide the District Attorney's Office with a copy of the court's decision and the District Attorney's Office will reevaluate the matter.

2.     Official charges of misconduct filed by the Department when the charged misconduct comes within the definition of *Brady* material set forth in Section II.A, (i) if the employee resigns or retires after the charges are filed and before the misconduct case is decided, or (ii) if the employee is still active and likely will be called as a witness in a criminal case before the misconduct case is decided. In either case, before the Department notifies the District Attorney's Office of the employee's name the *Brady* Committee must determine that the seriousness of the misconduct and the strength of the evidence warrants notification under *Brady*. If the complaint of misconduct is later not sustained, the Department shall inform the District Attorney's Office and the District Attorney's Office will reevaluate the matter.

3.     Any arrest, conviction or pending criminal charge for a felony or moral turpitude offense.

III.    NOTIFICATION TO DISTRICT ATTORNEY

A.    SFPD procedure for identifying potential Brady Material. The Department may become aware of *Brady* material based on an internal administrative investigation, a criminal investigation, in response to a request for information from the District Attorney in a pending case, or otherwise. Before the Department identifies an officer or a civilian employee to the District Attorney's Office as having *Brady* material in his or her personnel file or otherwise, the following procedures shall occur:

1. The Department shall create a synopsis identifying the employee, the conduct that may give rise to a *Brady* obligation to report, and the documents and information that potentially should be disclosed. The Department shall create a form that includes spaces for the synopsis, the Brady Committee's recommendation, a notation as to whether the employee has submitted any responsive information, and the Chief's determination.

2. A "*Brady* Committee" shall meet, review the synopsis and recommend to the Chief of Police on the form whether disclosure of the employee's name should be made to the District Attorney. The Committee shall consist of the Assistant Chief of the Office of Chief of Staff, the Director of Risk Management, the head of the Legal Division, the Director of Staff Services, and the author of the synopsis. The Department shall retain a retired judge with criminal law experience to serve as a member of the Committee.

3. Before making a recommendation to the Chief of Police, the *Brady* Committee shall send a letter to the affected employee to notify the employee that the Committee has determined that the employee's file contains evidence of conduct that may be *Brady* material. The letter shall provide the employee with an opportunity to submit written information within 15 calendar days of the date of the letter as to why the conduct identified in the letter does not constitute *Brady* material. Upon reasonable notice and during business hours, the employee shall have the opportunity to review the form created by the Department. The Committee shall review any information submitted by the employee before making a final decision on its recommendation. Any information submitted by the employee shall be noted on and appended to the form.

4. The Committee shall forward the form containing its recommendation to the Chief of Police. The Chief or the Chief's designee shall approve or disapprove in writing on the form the disclosure of an employee's name to the District Attorney's Office.

5. The form and all accompanying documentation, including any response by the employee, shall be placed in the employee's personnel file.

B. SFPD procedure for notifying District Attorney's Office. Upon the completion of the internal review within the Department, the Director of Risk Management or designee shall send a written memorandum to the Chief of the Criminal Division in the District Attorney's Office that states the

SFPD 427 (8/91) *

vi

following: "The San Francisco Police Department is identifying [name of employee, star number if applicable, and date of separation from the Department if not a current employee] who has material in his or her personnel file that may be subject to disclosure under *Brady v. Maryland* (1963) 373 U.S. 83."

At the same time, the SFPD shall provide a copy of the written notification to the involved employee. The copy shall be appended to the form described in Section III.A , and as stated above, the form shall be placed in the employee's personnel file.

C.    Confidentiality of Files. All Department internal documents that identify employees as having potential *Brady* material, including the form described in Section III.A above, any attachments and any correspondence to or from the employee or the employee's representative, shall be treated as confidential, protected as a confidential personnel record, official information, and by any other applicable privilege or legal protection and shall be maintained in a secure file.

All memoranda from the Department to the District Attorney's Office that identify an employee as having potential *Brady* material in his or her personnel file shall be considered confidential, shall be protected as a confidential personnel record, as official information, and by any other applicable privilege or legal protection, and shall be maintained in a secure file.

The Department is aware that the District Attorney's Office will create a list of Department employees who have potential *Brady* material in their personnel files. The list shall include only the name of the employee, star number if applicable, and date of separation from the Department if not a current employee, and no other information. The list resides on a secure computer drive, accessible to Assistant District Attorneys, with a "read only" feature, precluding the copying, printing or transmission of the list (only the list administrators can alter any information on the list).

## IV.    PROCEDURE FOR JUDICIAL REVIEW IN OPEN CRIMINAL CASES

A.    Motion for *in camera* review. When the District Attorney's Office deems that a law enforcement officer, identified by the Department as having possible *Brady* material in their personnel file, is a material witness in a pending criminal case or intends to call that officer as a witness, the District Attorney shall make a "Brady" motion under Evidence Code Sections 1043 and 1045(e) to the court for *in-camera* review of the records. (See *Alford v. Superior Court, supra,* 29 Cal.4th at 1046; *Brandon, supra,* 29 Cal. 4th at p. 14; *United States v. Agurs, supra,* 427 U.S. 97, 106; *U.S. v. Dupuy* (9th Cir. 1985) 760 F.2d 1492, 1502;). As to non-sworn employees, the request shall be made pursuant to

Evidence Code Sections 1040 and 915(b). (See *Board of Trustees v. Superior Court* (1981) 119 Cal.App.3d 516, 525-526; *Johnson v. Winter* (1982) 127 Cal.App.3d 435.) At the time of application, the defense, the involved employee and the employing law enforcement agency will be notified of the request for *in-camera* review.

B.    Handling of Personnel Files. The Department shall handle *Brady* motions in the same manner as motions under Evidence Code 1043 and 1045(e).    The Department shall supply the material from personnel files to the Court for *in camera* review. Until there is a court order for disclosure, the Department shall not disclose personnel file material to the District Attorney's Office or to any other party to the case. The Department shall permit the employee to inspect the personnel file material upon reasonable notice and during business hours.

C.    Disclosure. If following *in camera* review, the court orders disclosure of personnel file information, disclosure of the information shall be made to all parties as ordered by the Court. The Department and District Attorney's Office will work with the Court on an efficient method for disclosure. The Department and District Attorney's Office will urge the Court to adopt a procedure under which all parties, the Department, the District Attorney's Office and the defense, receive the information at the same time in conjunction with a protective order. The prosecuting attorney shall request that the court issue a protective order against disclosure of the material in other cases pursuant to Evidence Code Section 1045, subdivisions (d) and (e). (See *Alford v. Superior Court, supra, 29 Cal. 4th 1033*.)

D.    File Control. Upon completion of a criminal case, the District Attorney's Office shall return to the Department all material from employee personnel files obtained pursuant to this Procedure for Disclosure. The District Attorney's office shall not maintain a depository organized by officer name of information obtained from SFPD personnel files pursuant to *in-camera* hearings. Instead, *Brady* motions shall be made in each future case in which the officer is a material witness. In connection with each motion, the Department shall keep a record of the files produced for *in camera* review and the material ordered disclosed by the Court.

V.    HISTORICAL INFORMATION

The Department has potential *Brady* material in its personnel files concerning officers and civilian employees that relates to conduct that has occurred in the past and thus may impact closed

criminal cases. The Department shall follow the procedures set forth in Section III.A., before providing information to the District Attorney's Office under this Section.

In order for the District Attorney's Office to satisfy any *Brady* obligation that may apply in closed criminal cases, the Department will provide the employee's name, star number if applicable, date of separation if not a current employee, and the following information. For conduct that has resulted in criminal arrest or conviction, the Department will provide the District Attorney with the relevant dates and description of the criminal conduct. For other types of misconduct, the Department will provide the District Attorney with the relevant dates.

The Department is aware that the District Attorney's Office will then take appropriate legal action to ensure that notice is given to all affected parties, including, but not limited to, filing a motion with the Court, giving written notice to a defendant's counsel of record, or giving written notice to the defense bar.

Except for the notification described in the prior paragraph, the motion procedure set forth in section IV.A, and as ordered by the court: (1) all information provided by the Department to the District Attorney's Office identifying an employee as having potential *Brady* material in his or her personnel file shall be considered confidential, shall be protected as a confidential personnel record, as official information, and by any other applicable privilege or legal protection, and shall be maintained in a secure file, and (2) the District Attorney's Office will maintain the confidentiality of all personnel information obtained pursuant to this Procedure for Disclosure and will follow the confidentiality provisions set forth in this policy, including but not limited to the return to the Department of all material from such personnel files when a criminal case is completed.

## CONCLUSION

The purpose of this procedure is to ensure that prosecutors and the defense receive sufficient information to comply with the constitutional requirements of *Brady* while protecting the legitimate privacy rights of law enforcement witnesses. This procedure is not intended to create or confer any rights, privileges, or benefits to defendants or prospective or actual witnesses.

SFPD 427 (8/91) *

## FOR INFORMATIONAL PURPOSES

This procedure governs the Department's communications to the District Attorney's Office concerning the identities of employees who may have *Brady* material in their personnel files. This procedure does not address the situation in which the Department determines that the existence of *Brady* material may prevent an employee from effectively testifying and consequently may limit the assignments available to the employee. The Department intends to implement a separate procedure to address that situation after meet and confer with the Police Officer's Association and other affected employee organizations.

Importantly, the Department does not assume that the communication of an employee's name to the District Attorney's Office automatically will disqualify an employee from particular assignments in the Department. A court will make the determination whether particular information constitutes *Brady* material in a particular case. A court may determine that the information is too remote, not material, not subject to disclosure or inadmissible for some other reason, and not order disclosure under *Brady*.

SFPD 427 (8/91) *

X

*See last page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Superior Court (Johnson)
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 228 Cal.App.4th 1046
**Rehearing Granted**

_____

**Opinion No.** S221296
**Date Filed:** July 6, 2015
_____

**Court:** Superior
**County:** San Francisco
**Judge:** Richard B. Ulmer, Jr.

_____

**Counsel:**

George Gascón, District Attorney, Jerry P. Coleman, Laura L. vanMunching, James R. Thompson and Allison G. MacBeth, Assistant District Attorneys, for Petitioner and Real Parties in Interest the People.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan and Seth K. Schalit, Deputy Attorneys General, for California Attorney General as Amicus Curiae on behalf of Petitioner and Real Parties in Interest the People.

Gregory D. Totten, District Attorney (Ventura) and Michael D. Schwartz, Assistant District Attorney, as Amici Curiae on behalf of Petitioner and Real Parties in Interest the People.

Rains Lucia Stern, Michael L. Rains and Zachary A. Lopes for Peace Officers' Research Association of California, The PORAC Legal Defense Fund and The San Francisco Police Officers' Association as Amici Curiae on behalf of Petitioner and Real Parties in Interest the People.

Nancy E. O'Malley, District Attorney (Alameda), Michael O'Connor, Assistant District Attorney, and Jeff Rubin, Deputy District Attorney, for Appellate Committee of the California District Attorneys Association as Amicus Curiae on behalf of Petitioner and Real Parties in Interest the People.

Bonnie M. Dumanis, District Attorney (San Diego), Laura Tanney and Linh Lam, Deputy District Attorneys, for San Diego District Attorney as Amicus Curiae on behalf of Petitioner and Real Parties in Interest the People.

Laura Tanney and Linh Lam, Deputy District Attorneys (San Diego), Jeff H. Rubin, Deputy District Attorney (Santa Clara) and Mark Zahner for California District Attorneys Association as Amicus Curiae on behalf of Petitioner and Real Parties in Interest the People.

Jeffrey F. Rosen, District Attorney (Santa Clara) and David A. Angel, Assistant District Attorney, as Amici Curiae on behalf of Petitioner and Real Parties in Interest the People.

**Page 2 – S221296 – counsel continued**

**Counsel:**

Dennis J. Herrera, City Attorney, Jeremy M. Goldman and Christine Van Aken, Deputy City Attorneys, for Petitioner City and County of San Francisco.

Green & Shinee, Richard A. Shinee and Elizabeth J. Gibbons for Association of Los Angeles Deputy Sheriffs as Amicus Curiae on behalf of Petitioner City and County of San Francisco.

Nina D. Sariaslani for Petitioner City and County of San Francisco Police Department.

Sedgwick and Michael L. Fox for Respondent.

Jeff Adachi, Public Defender, Matt Gonzalez, Chief Attorney, and Christopher Gauger, Deputy Public Defender, for Real Party in Interest Daryl Lee Johnson

Molly O'Neal, Public Defender (Santa Clara), and Andy Gutierrez, Deputy Public Defender, as Amici Curiae.

Manning & Kass, Ellrod, Ramirez, Trester, Eugene P. Ramirez, Tony M. Sain and Scott Wm. Davenport for City of Azusa and City of South Gate as Amici Curiae.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Laura L. vanMunching
Assistant District Attorney
850 Bryant Street, Room 322
San Francisco, CA  94103
(415) 551-9577

Jeremy M. Goldman
Deputy City Attorney
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, CA  94102-4682
(415) 554-6762

Michael L. Fox
Sedgwick
333 Bush Street, 30th Floor
San Francisco, CA  94104
(415) 781-7900

Christopher Gauger
Deputy Public Defender
555 Seventh Street
San Francisco, CA  94103
(415) 553-9734