Filed 9/8/20  P. v. Williams CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C088584 |
| Plaintiff and Respondent, | (Super. Ct. No. MAN-CR-FE-2016-0012838) |
| v. | |
| WAYNE EDWARD WILLIAMS, | |
| Defendant and Appellant. | |

Defendant Wayne Edward Williams appeals from his conviction for felony evading a peace officer with willful and wanton disregard for the safety of other persons and property.  Defendant first contends the evidence was insufficient to support the conviction; we disagree.

1

Before trial, defendant filed a motion seeking *Pitchess*[1] and *Brady*[2] material in a testifying officer's personnel file. The trial court determined defendant made a sufficient good cause showing only for a *Brady* review, and after an in camera hearing declined to disclose anything. The People later sought disclosure to the defense of documents in the People's possession (and related to that same officer) that they had classified as *Brady* material, and the trial court reviewed and disclosed the identified material. Defendant now requests that we review the in camera proceeding to determine whether he was prejudiced by his trial counsel's failure to make a good cause showing for a *Pitchess* review, and also whether the trial court failed to disclose *Brady* material beyond that later disclosed at the People's request. Finally, defendant requests that we review the trial court's ruling excluding the disclosed *Brady* material from use at trial under Evidence Code section 352.[3]

We conclude defendant suffered no prejudice from his trial counsel's failure to secure a *Pitchess* review, and we see no abuse of discretion in the trial court's decision to make no disclosure after its in camera *Brady* review. We will affirm the judgment.

FACTS AND PROCEEDINGS

*Prosecution Evidence*

At approximately 11:20 a.m., California Department of Fish and Wildlife Game Warden Michael Hampton was in his full duty uniform, which was a green shirt with an external vest carrier containing department patches. His shirt included two patches on each shoulder that were five-inches long. Hampton was traveling southbound on Interstate 5 in heavy traffic; he was driving a green Chevrolet Silverado Fish and Wildlife

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

[2] *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*).

[3] Further undesignated statutory references are to the Evidence Code.

patrol truck. The truck had the agency star emblem on the side including the words "game warden" and "law enforcement." Hampton's truck had a siren, and when activated, a bar of lights on his roof that alternated red and blue, flashing wigwag headlights and other flashing white lights in the grill, and solid red and blue lights in the grill. Hampton was traveling in the number three lane along a section of the interstate that had four lanes in each direction.

Defendant approached Hampton from behind, traveling at a high rate of speed, weaving in and out of traffic, and cutting off other cars. He passed Hampton in the number two lane traveling approximately 90 miles per hour. Hampton did not make eye contact with defendant and never saw the driver, but Hampton recorded the license plate on the car. As soon as defendant passed him, Hampton activated his emergency lights and siren. Defendant accelerated and began driving more aggressively, passing some vehicles on the shoulder and cutting off others. After attempting to catch up with defendant for approximately 15 to 20 seconds, Hampton determined it was unsafe to continue the pursuit, and he deactivated his lights, but followed as defendant exited and again entered the interstate at Roth Road, without stopping at a stop sign. Hampton lost sight of defendant's car until he saw defendant driving on a road parallel to the interstate. Hampton saw an unmarked police car pursuing defendant with its forward red light activated.

Manteca Police detective Aaron Montoya saw defendant's car while traveling southbound on Interstate 5, south of Roth Road, in the number three lane. Montoya wore plain clothes and a tactical vest with his police badge affixed to the right side, a police department patch on the left side, and a large police patch on the back. He drove an unmarked black sedan with a siren, wigwag headlights, a solid red lamp near the rear view mirror, and a flashing blue lamp next to the red lamp.

Montoya first saw defendant approach him from behind while driving on the shoulder of the road and "throwing smoke and dust toward the rear of the car." Traffic

was heavy, and other drivers were taking evasive maneuvers to get out of defendant's way. As defendant drew parallel with Montoya while driving approximately 95 miles per hour on the shoulder of the interstate, Montoya activated all of his emergency lights and his siren. Defendant accelerated and moved into a lane, then back to the shoulder.

Manteca Police detective Armen Avakian was also traveling southbound on Interstate 5. He saw Montoya, who was three or four car lengths behind him in the number three lane, activate his emergency lights. Avakian was in plain clothes, wore a beard and was likely wearing sunglasses, and he drove an unmarked pickup truck equipped with tinted windows (but only light, factory-applied tint on the front windshield), a siren, and emergency lights, including a forward-facing solid red light in the windshield, a flashing blue light in the windshield, alternating flashing blue and red lights in the grill, and wigwag headlights. Avakian saw defendant traveling on the shoulder of the interstate at no less than 80 miles per hour. Avakian activated his emergency lights and pursued defendant when defendant passed him. Avakian later recorded defendant's license plate consistently with Hampton. Avakian never saw Hampton's truck. After Avakian activated his emergency lights and siren, defendant did not stop or slow down.

Montoya and Avakian followed defendant when he left the interstate at the Lathrop Road exit. Montoya remained approximately six to eight car lengths behind Avakian. Defendant drove through multiple red lights and stop signs. Once Avakian caught up to defendant, Avakian maintained a distance between his truck and defendant's car of approximately six to eight car lengths, and there were no cars between Avakian and defendant. Montoya momentarily lost sight of defendant and Avakian, but he eventually caught up. Defendant eventually stopped in the driveway of his residence. Montoya arrived seconds after Avakian, and they detained defendant.

At the conclusion of the prosecution's case-in-chief, defendant moved to dismiss the only charged crime: felony evading a peace officer with willful and wanton disregard

4

for the safety of other persons and property. (Veh. Code, § 2800.2, subd. (a); count 1.) The trial court weighed the evidence and evaluated the credibility of the witnesses, and it found the prosecution had proved its case beyond a reasonable doubt.

*Defendant's Testimony*

Defendant testified on his own behalf. Defendant suffers from bipolar disorder, and he does not like being out in public. On the day of his arrest a jury had acquitted him of a criminal charge, and while he was driving he was anxious, distracted, panicked, and overwhelmed. He was driving approximately 90 miles per hour on the interstate when he saw lights behind him, so he exited the interstate at Roth Road. He drove through the stop sign at the end of the Roth Road offramp at approximately 10 miles per hour without stopping.

He got back on the interstate, although he was still panicking. He had difficulty merging into traffic, so he drove on the shoulder of the interstate and passed cars until he could merge. He changed lanes so he could have more space.

Upon exiting the interstate, he stopped in the middle of an intersection. He was having car trouble while driving at slower speeds, so he continued driving approximately 45 miles per hour and up to speeds of 90 miles per hour. He agreed with Avakian's testimony that he drove through intersections at 30, 25, and 40 miles per hour. He finally saw a truck's lights when he was less than a mile from home. He also heard a high-pitched sound coming from the truck, but it did not sound like a police siren. He did not know what to do, so he continued driving home and stopped in his driveway.

While he acknowledged turning at intersections with traffic lights, he testified those lights were still yellow when he drove through them. He acknowledged he drove straight through intersections with solid red lights, and he admitted to speeding and accelerating on the shoulder of the freeway to merge into traffic. He was feeling faint and dizzy when he was driving through the red lights and thought he was having a medical emergency.

5

*Verdict and Sentence*

The trial court, sitting as the factfinder, found defendant guilty of evading a peace officer. The court suspended imposition of sentence and placed defendant on formal probation for five years.

Defendant filed a timely notice of appeal.

## DISCUSSION

### I

*Sufficiency of the Evidence*

Defendant contends the evidence is insufficient to support his conviction because none of the officers who pursued him satisfied each of the elements of the charged offense. We disagree.

A. *Standard of Review*

To assess the sufficiency of the evidence, we review the whole record to determine whether it discloses substantial evidence to support the verdict--i.e., evidence that is reasonable, credible, and of solid value--such that a reasonable trier of fact could find defendant guilty beyond a reasonable doubt. (*People v. Maury* (2003) 30 Cal.4th 342, 396.) In applying the standard, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the finder of fact could reasonably have deduced from the evidence. (*People v. Boyer* (2006) 38 Cal.4th 412, 480, superseded by statute on another ground; see *People v. Blair* (2005) 36 Cal.4th 686, 744, overruled on another ground by *People v. Black* (2014) 58 Cal.4th 912.) " '[I]f the circumstances reasonably justify the [factfinder's] findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding.' [Citation.] We do not reweigh evidence or reevaluate a witness's credibility. [Citation.]" (*People v. Guerra* (2006) 37 Cal.4th 1067, 1129, overruled on another ground in *People v. Rundle* (2008) 43 Cal.4th 76, 151.)

Where a Penal Code section 1118 motion is raised at the close of the prosecution's case-in-chief, the sufficiency of the evidence is tested as it stands at that point in the proceedings. (*People v. Cole* (2004) 33 Cal.4th 1158, 1212-1213; *People v. Belton* (1979) 23 Cal.3d 516, 521, 527.)

B. *Legal Background*

Vehicle Code section 2800.2 establishes a felony where a motorist drives a vehicle "in a willful or wanton disregard for the safety of persons or property" while attempting to elude a pursuing peace officer in violation of Vehicle Code section 2800.1. (Veh. Code, § 2800.2, subd. (a).) Vehicle Code section 2800.1 makes it a crime if a motorist "willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle" and all of the following conditions exist: "(1) The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp. [¶] (2) The peace officer's motor vehicle is sounding a siren as may be reasonably necessary. [¶] (3) The peace officer's motor vehicle is distinctively marked. [¶] (4) The peace officer's motor vehicle is operated by a peace officer . . . wearing a distinctive uniform." (Veh. Code, § 2800.1, subd. (a).) "Thus, the statute requires four distinct elements, each of which must be present: (1) a red light, (2) a siren, (3) a distinctively marked vehicle, and (4) a peace officer in a distinctive uniform. [Citation.]" (*People v. Hudson* (2006) 38 Cal.4th 1002, 1008.)

For purposes of determining whether a pursuing officer's vehicle is "distinctively marked," the vehicle's outward appearance must "exhibit[ ], *in addition to* a red light and a siren, one or more features that are reasonably visible to other drivers and distinguish it from vehicles not used for law enforcement so as to give reasonable notice to the fleeing motorist that the pursuit is by the police." (*People v. Hudson*, *supra*, 38 Cal.4th at pp. 1010-1011.) No particular form or specific type of mark, insignia, or logo is required for a vehicle to be "distinctively marked." (*Id.* at p. 1013.) As our Supreme Court has explained, "a properly instructed jury could reasonably have found that the [police] car's

7

'blue amber blinking lights' were reasonably visible to other drivers and distinguished the car from vehicles not used for law enforcement, and thus that the car was distinctively marked." (*Id.* at p. 1014.) Similarly, this court has concluded, "red lights, siren, and wigwag headlights were sufficiently distinctive markings to inform any reasonable person he was being pursued by a law enforcement vehicle." (*People v. Mathews* (1998) 64 Cal.App.4th 485, 490 (*Mathews*); see also *People v. Estrella* (1995) 31 Cal.App.4th 716, 723 (*Estrella*).)

With respect to the requirement that the officer wear a "distinctive uniform," the court in *Estrella* noted that a "uniform" is a "dress of a distinctive design or fashion adopted by or prescribed for members of a particular group and serving as a means of identification." (*Estrella*, *supra*, 31 Cal.App.4th at p. 724, citing Webster's 3d New Internat. Dict. (1986) p. 2498.) Such a uniform is "distinctive" if it "serves to distinguish, or sets something apart from others, or if it is characteristic of or peculiar to its type." (*Estrella*, at p. 724, citing Webster's 3d New Internat. Dict., *supra*, at p. 659.) "Thus, a law enforcement officer's 'distinctive uniform' is the clothing prescribed for or adopted by a law enforcement agency which serves to identify or distinguish members of its force." (*Mathews*, *supra*, 64 Cal.App.4th at p. 490.) The statute does not require that the person eluding capture actually see that the police officer is wearing a distinctive uniform. (*Estrella*, at p. 724; accord *People v. Byrd* (2016) 1 Cal.App.5th 1219, 1223.)

In *Estrella*, the court concluded an officer dressed in a gun belt and a bulletproof vest with a covering for the vest bearing the word "Police" was wearing a distinctive uniform. (*Estrella*, *supra*, 31 Cal.App.4th at pp. 719, 724.) Similarly, an officer dressed in plain clothes but wearing a police department vest with a cloth badge, a gun belt, and a navy blue baseball cap with the word "Police" in yellow lettering was wearing a "distinctive uniform." (*Ibid*.) In *Mathews*, the court concluded an officer in civilian clothes but wearing at waist level a police department-issued badge, a gun, and gun belt was not in a distinctive uniform. (*Mathews*, *supra*, 64 Cal.App.4th at pp. 487, 491.) The

8

court observed a badge is not an article of clothing and cannot constitute a "distinctive uniform." (*Id.* at p. 491.)

Defendant contends that none of the three pursuing officers, Hampton, Avakian, or Montoya, satisfied each of the elements necessary to support his conviction of felony evading. The trial court concluded the uniforms and vehicles of Hampton and Montoya satisfied the statutory elements; we discuss each in turn.[4]

C. *Hampton*

Defendant contends Hampton's pursuit failed to satisfy the elements of the charged offense because Hampton's uniform was not "reasonably visible" to defendant. He argues, "it would be near impossible for a person driving 90 miles per hour and constantly changing lanes to be able to see the forest green uniform of a driver who is already multiple cars behind him." In support of his interpretation of the "distinctive uniform" requirement, defendant points to a sentence in *Estrella*, *supra*, 31 Cal.App.4th at page 724, in which the court stated, "Here, Haskins's badge and the lettering across the front of his police cap would be reasonably visible." Defendant seizes upon this statement to contend the prosecution must establish the pursuing officer's uniform "is reasonably visible to a person in the same circumstance."

We disagree with defendant's interpretation of the "distinctive uniform" element. As *Estrella* provides, the officer's uniform must be a distinctive design or fashion adopted by or prescribed by law enforcement and serving as a means of identification. (*Estrella*, *supra*, 31 Cal.App.4th at p. 724.) In this context, a uniform is "distinctive" if it "serves to distinguish, or sets something apart from others, or if it is characteristic of or

---

[4] We agree with defendant the evidence is insufficient to support the verdict regarding Avakian, who the parties agree was not wearing a distinctive uniform. (See *Mathews*, *supra*, 64 Cal.App.4th at pp. 487, 491.) We observe, however, the trial court did not conclude the elements of the crime were met as to Avakian.

peculiar to its type." (*Ibid.*) We interpret *Estrella* to mean that a law enforcement officer's uniform is distinctive if it has been adopted by or prescribed by law enforcement as a means of identifying the officer, and the uniform distinguishes the officer as a member of law enforcement.

Contrary to defendant's interpretation, the "distinctive uniform" requirement does not require that the uniform must be "reasonably visible" to defendant *in his or her particular circumstances during the evading*. Were defendant's interpretation correct, the statute would almost certainly not apply to any pursuit occurring after dark, when a fleeing driver would not be reasonably likely to see a pursuing officer's otherwise distinctive uniform. Nor would the statute apply where defendant's driving is *so* reckless--as defendant argues here--that he was not reasonably likely to have seen the officer's uniform. We reject a reading of the statute that would exculpate a driver who evaded police for driving so recklessly that he or she was unable to see an otherwise distinctive uniform. (See *People v. Catelli* (1991) 227 Cal.App.3d 1434, 1448 [in ascertaining legislative intent, we presume the Legislature did not intend absurd results].)

Here, Hampton satisfied each of the statutory elements of the charged crime. He wore a distinctive uniform--his full duty uniform--that included a green shirt containing two five-inch department patches and a vest including department patches. He drove a marked California Fish and Wildlife truck, which included a star emblem on its side with the words "game warden" and "law enforcement." As defendant passed Hampton in the lane adjacent to him, Hampton activated his emergency lights, which included alternating red and blue lights affixed to the roof of his truck, wigwag headlights, and solid red and blue lights in the grill of the truck, and his siren.

Defendant also contends the evidence was insufficient to support his conviction based on Hampton's pursuit because Hampton only activated his lights for a short period of time--15 to 20 seconds--and never drove directly behind defendant with his lights activated.

Again, we disagree. Hampton activated his lights and siren as soon as defendant passed him. Rather than slow down when Hampton activated his lights and siren, defendant accelerated and began driving more aggressively, passing vehicles on the shoulder and cutting off others. After attempting to catch up with defendant, Hampton determined it was unsafe to continue the pursuit, and he deactivated his lights. We conclude 15 to 20 seconds of pursuit is a sufficient length of time for defendant to have realized Hampton was attempting to detain him. There is substantial evidence to support defendant's conviction as to Hampton.

D. *Montoya*

For reasons similar to those with respect to Hampton, defendant contends the evidence was insufficient to support his conviction based on Montoya's pursuit because Montoya's police vest was not reasonably visible to him during the pursuit. He points to the fact that Montoya drove behind Avakian, meaning defendant could not see his vest. We reject defendant's interpretation of the "distinctive uniform" element for the reasons described *ante*. Here, Montoya wore a tactical vest with his police badge attached, a police department patch on the left side, and a large police patch on the back. Montoya's uniform was "distinctive" as required by the statute. Montoya satisfied the other requirements of the statute. His vehicle displayed a forward-facing solid red lamp, a flashing blue lamp, and flashing "wigwag" headlights. During the pursuit, he activated his siren.

We conclude substantial evidence supports the finding that defendant willfully fled from Montoya in wanton disregard for the safety of persons and property.

Because substantial evidence supports a guilty verdict on the single count charging defendant with evading both Hampton and Montoya, we conclude defendant's claim of insufficient evidence is without merit.

11

II

*Officer Personnel File Discovery*

Before trial, defendant filed a motion under *Pitchess*, *supra*, 11 Cal.3d 531 and *Brady*, *supra*, 373 U.S. 83 requesting complaints against Avakian regarding lack of credibility, excessive force, hostility or aggression, prior wrongful acts involving moral turpitude, dishonestly or untruthfulness, false arrest, racial or sexual discrimination, or material or exculpatory material. Concluding defendant failed to make a good cause showing for a review of Avakian's file for *Pitchess* material, the trial court conducted an in camera hearing for purposes of determining whether Avakian's personnel records contained *Brady* material. It found there was no *Brady* material to disclose. Later, the prosecutor informed the court he possessed what he believed to be *Brady* material as to Avakian. The trial court disclosed the material to the defense, but it later granted the prosecutor's motion to exclude the evidence from trial under section 352 as substantially more prejudicial than probative.

Defendant now asks us to review the record to determine whether: (1) his trial counsel was constitutionally ineffective by failing to make a sufficient showing to trigger an in camera *Pitchess* review of Avakian's personnel records; (2) the trial court abused its discretion by failing to disclose *Brady* material (that was not later disclosed to the parties) following the in camera proceeding; and (3) the trial court abused its discretion by excluding the disclosed *Brady* material under section 352. We conclude the trial court failed to follow proper *Pitchess* procedures as required when reviewing Avakian's personnel file for *Brady* material, but that the court did not abuse its discretion because the citizen complaint in Avakian's file did not satisfy the materiality requirement as defined by *Brady*.

A. Brady *and* Pitchess *Background*

*Brady*, *supra*, 373 U.S. 83 and its progeny generally obligate the prosecution to disclose to the defense evidence that is " 'favorable to the accused' and is 'material' on

the issue of either guilt or punishment." (*City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 7.) " 'For *Brady* purposes, evidence is favorable if it helps the defense or hurts the prosecution, as by impeaching a prosecution witness.' [Citation.] '[The] touchstone of materiality is a "reasonable probability" of a different result . . . . The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial." ' [Citation.] In determining whether evidence is material under this standard, we consider ' "the effect of the nondisclosure on defense investigations and trial strategies." ' [Citation.]" (*People v. Williams* (2013) 58 Cal.4th 197, 256.) Thus, there are three components of a *Brady* violation: (1) the evidence must be favorable to the accused, (2) the evidence must have been suppressed by the State, either willfully or inadvertently, and (3) prejudice must have ensued. (*People v. Salazar* (2005) 35 Cal.4th 1031, 1043 (*Salazar*).)

" 'In general, impeachment evidence has been found to be material where the witness at issue "supplied the only evidence linking the defendant(s) to the crime," [citations], or where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case [citation]. In contrast, a new trial is generally not required when the testimony of the witness is "corroborated by other testimony," [citations].' [Citation.]" (*Salazar*, *supra*, 35 Cal.4th at p. 1050.) "Because it may be difficult to know before judgment what evidence will ultimately prove material, 'the prudent prosecutor will resolve doubtful [*Brady*] questions in favor of disclosure.' [Citations.]" (*Association for Los Angeles Deputy Sheriffs v. Superior Court* (2019) 8 Cal.5th 28, 40.)

The prosecution's duty of disclosure extends to evidence "known to others acting on the prosecution's behalf, including the police. [Citations.] The duty to disclose

13

'exists even though there has been no request by the accused.' [Citations.]" (*People v. Superior Court (Johnson)* (2015) 61 Cal.4th 696, 709 (*Johnson*).) Where a defendant seeks the disclosure of *Brady* material, it may file a *Pitchess* motion and follow its attendant procedures. (*Johnson*, at pp. 716, 718, 722.)

Outside of the *Brady* context, *Pitchess* motions allow a criminal defendant to "compel the discovery" of certain information in police officer personnel files. (*Johnson*, at p. 710.) "Traditionally, *Pitchess* motions seek information about past complaints by third parties of excessive force, violence, dishonesty, or the filing of false police reports contained in the officer's personnel file." (*Rezek v. Superior Court* (2012) 206 Cal.App.4th 633, 640 (*Rezek*).)

*Pitchess* motions are governed by specific statutory procedures. (§§ 1043-1047, Pen. Code, §§ 832.5, 832.7, 832.8.) "The [written] motion must describe the type of records or information sought and include an affidavit showing good cause for the discovery, which explains the materiality of the information to the subject of the pending litigation and states on reasonable belief that the governmental agency has the records or information. [Citations.]" (*Johnson*, *supra*, 61 Cal.4th at p. 710.)

" ' A showing of "good cause" exists if the defendant demonstrates both (1) a "specific factual scenario" that establishes a "plausible factual foundation" for the allegations of officer misconduct [citations], and (2) that the misconduct would (if credited) be material to the defense [citation] . . . . Accordingly, defense counsel's supporting declaration must propose a defense and articulate how the requested discovery may be admissible as direct or impeachment evidence in support of the proposed defense, or how the requested discovery may lead to such evidence. [Citation.] Thus, a defendant meets the materiality element by showing (1) a logical connection between the charges and the proposed defense; (2) the requested discovery is factually specific and tailored to support the claim of officer misconduct; (3) the requested discovery supports the proposed defense or is likely to lead to information that will do so; and (4) the requested

14

discovery is potentially admissible at trial. [Citation.]' [Citation.]" (*Rezek*, *supra*, 206 Cal.App.4th at pp. 639-640.)

If the trial court concludes good cause has been established, the custodian of the officer's records must bring to court all the potentially relevant records and, in camera, the court determines whether, subject to certain statutory exceptions and limitations,[5] any information from the records need be disclosed to the defense. (*People v. Mooc, supra,* 26 Cal.4th at pp. 1226-1227; *Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1019; § 1045, subd. (b).)

"The *Pitchess* procedure ' "operates in parallel with *Brady* and does not prohibit the disclosure of *Brady* information." ' [Citation.] Accordingly, 'all information that the trial court finds to be exculpatory and material under *Brady* must be disclosed, notwithstanding . . . section 1045's [bar on disclosure of records more than five years old].' [Citation.]" (*Serrano v. Superior Court* (2017) 16 Cal.App.5th 759, 768.)

"A motion for discovery of peace officer personnel records is addressed to the sound discretion of the trial court, reviewable for abuse. [Citations.]" (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039.)

B. *Procedural Background*

In March 2018 defendant filed a *Pitchess*/*Brady* motion for discovery of Avakian's peace officer personnel records. In the points and authorities section of the *Pitchess* motion, defense counsel argued "the requested records would be useful in demonstrating that the officers fabricated information regarding their pursuit of Williams,

---

[5] The trial court must exclude from discovery: "(1) Information consisting of complaints concerning conduct occurring more than five years before the event or transaction that is the subject of the litigation in aid of which discovery or disclosure is sought. [¶] (2) In any criminal proceeding the conclusions of any officer investigating a complaint filed pursuant to Section 832.5 of the Penal Code. [¶] (3) Facts sought to be disclosed that are so remote as to make disclosure of little or no practical benefit." (§ 1045, subd. (b); see also *People v. Mooc* (2001) 26 Cal.4th 1216, at pp. 1226-1227.)

falsified their reports to substantiate their illegal detention, and utilized excessive force to detain Williams." Counsel's declaration supporting the *Pitchess* motion failed to make a similar argument; it only asserted Avakian's name was on a "*Brady* list" maintained by the district attorney's office.

On May 22, 2018, the trial court concluded defense counsel's declaration failed to make a good cause showing sufficient to trigger an in camera *Pitchess* review of Avakian's records because it did not provide a plausible scenario of alleged officer misconduct with respect to Avakian. The court granted defendant's motion to review Avakian's personnel records in camera only for *Brady* material.

A court reporter, the city attorney representative, and the custodian of records for the Manteca Police Department were present at the in camera proceeding. The custodian testified Avakian's personnel file contained only one citizen complaint, and he briefly described the facts of the incident giving rise to the complaint. The matter was not referred to the district attorney for prosecution, and the incident did not involve conduct involving moral turpitude, defined during the proceeding as "lie, cheat, or steal." While Avakian was "held responsible for the conduct" by the department, the custodian reiterated the incident "did not involve any moral turpitude conduct." The court did not personally review any documents, much less copy them to preserve a record for review, or describe in any detail the documents brought to the proceeding by the custodian. Nevertheless, based on the custodian's representations, the court determined Avakian's personnel file did not contain *Brady* material, and it sealed the transcript of the hearing.

On July 2, at a pretrial hearing, the trial court stated the prosecutor had provided potential *Brady* material to the court earlier that day. The court observed the material contained "allegations of potentially moral turpitude conduct," and it disclosed the material to the defense "to err[] on the side of caution," marked it as court exhibit A, and sealed it.

16

In October the prosecution filed a supplemental motion in limine requesting that the trial court instruct the defense not to reference court exhibit A at trial. The court unsealed court exhibit A, and the parties reviewed its contents. In arguing the merits of the motion, the parties and the court discussed the details of the citizen complaint in court exhibit A. The complaint involved an incident in which Avakian, while off-duty, went to a man's house to confront him because he believed the man had tried to kiss his wife. In the summary of an interview included in court exhibit A, a member of the man's family relayed Avakian's statement that Avakian's wife had followed the man back to his house. Avakian became upset when the man's family told him the man was not home. Avakian did not use a gun, inform the family he was a peace officer, or threaten the family with a crime.

Court exhibit A included an unsubstantiated and speculative allegation made by a representative of the man's family that Avakian might have improperly used a police or Department of Motor Vehicles (DMV) database to obtain the man's address. The court acknowledged the allegation that Avakian "possibly . . . illegally used a database to find out the address of this person's home" was "a bit more troublesome," but the court observed that the allegation was "complete speculation." The court excluded the evidence in court exhibit A under section 352 because it is "just not probative and it would be more prejudicial and time consuming to get into that." The court resealed court exhibit A.

C. *Ineffective Assistance of Counsel*

Defendant requests that we independently review the trial court's in camera review of Avakian's personnel file for *Brady* material to determine whether his trial

counsel was constitutionally ineffective for failing to make a good cause showing necessary to trigger *Pitchess* review of the personnel file.[6]

A criminal defendant is entitled to the effective assistance of counsel, whether appointed or retained. (See *Cuyler v. Sullivan* (1980) 446 U.S. 335, 344-345; *People v. Montoya* (2007) 149 Cal.App.4th 1139, 1147.) An ineffective assistance of counsel claim has two prongs. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) First, defendant must show that his counsel's representation was deficient in falling below an objective standard of reasonableness under prevailing professional norms. (*People v. Ledesma* (1987) 43 Cal.3d 171, 216.) Second, defendant must show there is a reasonable probability that, but for counsel's errors, the result would have been different. (*Id.* at pp. 217-218.) " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.]" (*Id.* at p. 218.) If defendant makes an insufficient showing on either one of these components, his ineffective assistance claim fails. (*People v. Holt* (1997) 15 Cal.4th 619, 703.)

We have reviewed the in camera proceeding, and we conclude defendant was not prejudiced by his counsel's failure to make a good cause showing sufficient to trigger *Pitchess* review of Avakian's personnel records. In this case, the only potentially relevant *Pitchess* material in Avakian's file would have been evidence of conduct involving moral turpitude. (See *People v. Wheeler* (1992) 4 Cal.4th 284, 295-297

---

[6] The Attorney General contends defendant's argument is without merit because the trial court conducted an in camera review of Avakian's personnel records. But the court's in camera review was only for *Brady* material, not *Pitchess* material. *Brady*'s constitutional materiality standard is narrower than the *Pitchess* requirements (*Johnson*, *supra*, 61 Cal.4th at pp. 711-712), and therefore it is possible for information to be discoverable under *Pitchess* while not discoverable under *Brady*. Therefore, we review the in camera proceeding to determine whether the proceeding described information that would have been discoverable under *Pitchess*, even where the court determined there was no *Brady* material to disclose.

[nonfelony conduct involving moral turpitude ordinarily admissible to impeach witnesses in a criminal trial, subject to court's discretion under § 352].) A citizen complaint demonstrating that Avakian became upset during a private dispute is not relevant to any defense to the charged crime of felony evading a peace officer. (See *Rezek*, *supra*, 206 Cal.App.4th at pp. 639-640 [showing of good cause to support *Pitchess* review requires that the requested discovery supports a defense to the charged crime or is likely to lead to information that will do so].)

As we have noted, it does not appear the trial court personally reviewed any materials or made a record of the documents the custodian brought for review in camera. (See *Johnson*, *supra*, 61 Cal.4th at p. 719 [under *Pitchess* procedures, court is required to keep a record of what it reviewed to provide meaningful appellate review].) However, our review of the entire record allows us to draw conclusions about the contents of Avakian's personnel file. The custodian testified there was only one citizen complaint in the file and described the facts underlying that complaint with sufficient particularity that it would be an unimaginable coincidence were the complaint *not* to have stemmed from the same incident later disclosed to the defense as court exhibit A. The custodian testified under oath that the conduct described in the complaint in Avakian's file did not include lying, cheating, or stealing, and did not involve moral turpitude. That characterization is supported by our review of the material in court exhibit A and the parties' and the court's discussion of that material. While there is an allegation by a representative of the complaining family that Avakian might have accessed a police or DMV database to find the man's address, nothing in the record suggests that allegation was ever substantiated.

Without a copy of the documents reviewed in chambers, we cannot say with absolute certainty that the allegation Avakian improperly accessed a database was not substantiated by some other document in Avakian's file not disclosed in court exhibit A. But nothing in the record suggests the allegation was substantiated--indeed, the materials

19

in court exhibit A suggest Avakian obtained the man's address because his wife followed the man home. But it is *possible* that the allegation was substantiated, and the records custodian did not consider the substantiated allegation as "lying, cheating, or stealing," especially if Avakian forthrightly acknowledged what he had done when asked by internal investigators. However, such a remote possibility of a relevant document in Avakian's file is insufficient to show a "reasonable probability" of a different result such that it undermines confidence in the outcome. (*People v. Ledesma*, *supra*, 43 Cal.3d at pp. 217-218.)

Moreover, as we will explain *post*, the existence of such a document substantiating the allegation is not reasonably probable to have changed the outcome because defendant did not dispute Avakian's testimony that he committed multiple vehicle code violations, Avakian's testimony was corroborated by Montoya, and the elements of the crime were established as to Hampton, whom Avakian testified he did not see at all during the incident. Therefore, even if Avakian's testimony were successfully impeached, there is not a reasonable probability that the outcome of trial would have been different. Because defendant was not prejudiced by his counsel's failure to make a good cause showing to obtain *Pitchess* review of Avakian's records, his counsel was not constitutionally ineffective.

### D. Brady *Material In The In Camera Proceeding*

Defendant requests that we review the trial court's in camera proceeding and the material disclosed as court exhibit A to ensure that all of the *Brady* material that should have been disclosed following the in camera proceeding was eventually disclosed as court exhibit A. As stated *ante*, we are unable to determine whether the records custodian brought material to the in camera review that was not later disclosed in court exhibit A. But, for the reasons that follow, we conclude the trial court did not abuse its discretion by failing to disclose documents "favorable to the accused" and "material" as required for disclosure under *Brady*.

### 1. *Documents In Court Exhibit A Excluded Under Section 352*

The trial court excluded the documents disclosed as potential *Brady* material in court exhibit A under section 352 because the evidence was "just not probative and it would be more prejudicial and time consuming to get into that."[7] section 352 provides the trial court with discretion to exclude otherwise relevant evidence if its probative value is substantially outweighed by the probability that admitting the evidence will unduly prolong the proceeding, prejudice the opposing party, confuse the issues, or mislead the jury. (*People v. Kirkpatrick* (1994) 7 Cal.4th 988, 1014.) We review the trial court's rulings concerning the admissibility of evidence for abuse of discretion. (*People v. Thornton* (2007) 41 Cal.4th 391, 444-445.)

As we discussed *ante*, the allegation Avakian improperly accessed a database to find a man's address for purposes of confronting him is entirely speculative. Without any evidence suggesting Avakian's conduct involved moral turpitude, the material in court exhibit A has no probative value and was properly excluded under section 352. (See *People v. Lewis* (2001) 26 Cal.4th 334, 373 [speculative evidence properly excluded under section 352 because its probative value does not outweigh its prejudicial effect].)

### 2. *Corroborated Testimony and Overwhelming Evidence of Guilt*

Because the trial court failed to personally review the complaint from Avakian's personnel file, it is possible, albeit remotely, that the allegation of Avakian's improper

---

[7] Defendant requests that we independently review the materials in court exhibit A to determine whether the trial court abused its discretion in precluding the defense under section 352 from using that information to impeach Avakian's testimony at trial. The Attorney General contends defendant forfeited any claim of error regarding the trial court's ruling on court exhibit A by failing to object to the trial court resealing court exhibit A. But defendant does not contest the trial court's decision to reseal court exhibit A; rather, defendant requests that we independently review court exhibit A "to assess the propriety of the trial court's in limine ruling that precluded the defense from using the disclosed potential Brady material in Court's Exhibit A to impeach Detective Avakian." We have done so.

use of a database was substantiated within materials related to the complaint. This would have been relevant to impeach Avakian's testimony. However, even if we assume there were undisclosed documents in Avakian's file substantiating the allegation, Avakian's testimony was corroborated by both Montoya *and* defendant, and the evidence against defendant was overwhelming. (See *Salazar*, *supra*, 35 Cal.4th at p. 1050 [*Brady* impeachment evidence is material where the witness supplied only evidence linking defendant to the crime, or where the effect on the witness's credibility would have undermined critical element of prosecution case; new trial not required where witness's testimony is corroborated by other testimony]; *United States v. Ramos Algarin* (1st Cir. 1978) 584 F.2d 562, 565 [government misconduct harmless where evidence overwhelming]; accord, *Breest v. Perrin* (1st Cir. 1980) 624 F.2d 1112, 1116 [untainted evidence "point[s] strongly toward guilt"]; *United States v. Anderson* (5th Cir. 1978) 574 F.2d 1347, 1356 ["strong, independent evidence of guilt"].)

Here, defendant agreed during his testimony that he drove 90 miles per hour on the interstate, passed multiple cars on the shoulder of the interstate, drove through multiple stop signs without stopping, and drove through multiple solid red traffic lights without stopping. Defendant's defense at trial was that he did not *intentionally* evade peace officers because he suffers from mental illness, was panicked, distracted, and overwhelmed while driving, was having car trouble, and was not aware officers were pursuing him. Avakian's testimony, which focused on defendant's driving, was not relevant to defendant's intent. Therefore, even assuming defendant was able to impeach Avakian's testimony, the elements of the crime as testified to by Avakian were largely corroborated by defendant himself. Avakian's testimony was also corroborated by Montoya, whom the trial court--sitting as the factfinder in this case--found to be a credible witness.

Moreover, the trial court found that the elements of the charged offense were met as to Hampton, the game warden who pursued defendant. Avakian testified he did not

22

see Hampton during the relevant time period.  Thus, even if Avakian's testimony were completely discredited, the factfinder still found that defendant was guilty of the charged crime.  Therefore, while we recognize the "reasonable probability" standard of materiality under *Brady* only requires that the government's suppression of evidence " ' "undermines confidence in the outcome of trial" ' " (see *People v. Williams*, *supra*, 58 Cal.4th at p. 256), we conclude that requirement of materiality was not met here.

**DISPOSITION**

The judgment is affirmed.

\_\_\_\_\_/s/_____
Duarte, J.

We concur:

\_\_\_\_\_/s/_____
Mauro, Acting P. J.

\_\_\_\_\_/s/_____
Renner, J.