Filed 9/23/21  P. v. Young CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> TORAINO LEON YOUNG, <br><br> Defendant and Appellant. | F079921 <br><br> (Super. Ct. No. DF012462A) <br><br><br> **OPINION** |

-----

### THE COURT\*

APPEAL from a judgment of the Superior Court of Kern County.  John D. Oglesby, Judge.

Maureen M. Bodo, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez, and Cavan M. Cox II, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

-----

\*      Before Hill, P. J., Detjen, J. and DeSantos, J.

Defendant Toraino Leon Young stands convicted of assault with a deadly weapon by an inmate. He contends on appeal that his trial counsel was ineffective for failing to file a third *Pitchess*[1] motion, seeking disclosure of confidential peace officer records. The People disagree. We affirm.

**PROCEDURAL SUMMARY**

On August 24, 2016, the Kern County District Attorney filed an information charging defendant with assault with a deadly weapon by an inmate (Pen. Code, § 4501, subd. (a);[2] count 1). The information further alleged defendant had suffered two prior felony "strike" convictions within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(e)), had suffered a prior serious felony conviction (§ 667, subd. (a)), and had served a prior prison term (§ 667.5, subd. (b)).

On August 24, 2017, defendant filed a first *Pitchess* motion, seeking disclosure of confidential peace officer records for two officers and *Brady*[3] material related to 11 officers. On August 31, 2017, the Department of Corrections and Rehabilitation (CDCR), as custodian of records for the documents, filed an opposition to that motion. On September 14, 2017, the trial court denied the motion.

On May 22, 2018, defendant filed a second *Pitchess* motion, seeking disclosure of confidential peace officer records for six officers and any *Brady* material related to 11 officers. Again, the CDCR opposed the motion. On July 11, 2018, the trial court denied defendant's second motion.

On October 11, 2018, after a bench trial, the trial court found defendant guilty on count 1 and found all special allegations true. On August 7, 2019, the trial court

---

[1]    *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

[2]    All further statutory references are to the Penal Code unless otherwise stated.

[3]    *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*).

2.

sentenced defendant to 25 years to life in state prison as a third-strike offender.  The trial court struck the five-year serious felony conviction enhancement.

On September 9, 2019, defendant filed a notice of appeal.

## FACTUAL SUMMARY

On October 20, 2015, defendant was an inmate at Kern Valley State Prison (KVSP).  At about 1:30 p.m., defendant and other inmates were on afternoon yard release in the facility "A" yard.  Defendant approached fellow inmate Kio Simmons from the rear and struck Simmons on the right side of his head using his right hand.  No other inmate was within five feet of the two.  Simmons dropped to his knees and defendant struck him an additional two or three times.  Simmons did not fight back.  He attempted to protect his head with his hands.

KVSP Correctional Officers Lorenzo Gurrola and Stephanie Vera were supervising inmates on the facility "A" yard during the attack and KVSP Correctional Officer Ruben Robles was providing observation of facility "A" from an overlooking patio that stood approximately 25 feet above the ground.  Gurrola and Vera stood about 50 to 60 yards away from defendant and Simmons; Robles was approximately 40 or 50 yards away from defendant and Simmons.  When Gurrola saw defendant strike Simmons he radioed the other officers and gave all inmates on the yard an order to "prone out."  Vera and Robles also saw defendant strike Simmons.  Defendant stopped striking Simmons, walked about 10 feet away from Simmons and toward Gurrola, and "assumed the prone position."  Gurrola, Vera, and Robles all testified that they did not see defendant throw any weapon or make any throwing gesture.

As Gurrola and Vera approached Simmons, Simmons attempted to rise to his feet, but he appeared unsteady.  Gurrola placed Simmons in handcuffs and conducted a clothed body search for contraband.  A plastic inmate-manufactured weapon was discovered near where the fight took place.

KVSP Correctional Officer Ramiro Loza worked for the investigative services unit on October 20, 2015. At about 1:30 p.m., he was called to investigate an incident in the facility "A" yard involving a weapon. When he arrived, the inmates—other than Simmons, who was already removed from the yard—were laying facedown. He observed and took custody of a jagged inmate-manufactured weapon made from melted plastic that was sharpened to a point. He further observed that defendant had suspected blood on his shorts and on his right hand. He also observed a laceration on the knuckle of defendant's right thumb. Loza did not discover any blood on any other inmate.

Dr. Jeff Sao was a medical doctor at KVSP on October 20, 2015. He treated Simmons and discovered that he had suffered a laceration on the right side of the forehead; an abrasion above the right eye on the forehead; an almost three-quarter-inch laceration on the right side of the face, lateral to the right eye; a crater-like abrasion on the chin; and an abrasion and puncture at the upper right neckline near the jaw. Simmons was struck repeatedly on the right side. The injuries to the chin and neckline were consistent with the injury having been caused by the plastic inmate-manufactured weapon.

Dr. Sao treated defendant on October 27, 2015. On that date, defendant complained that his right hand was broken. Defendant claimed that he injured it in a fall a week prior. Dr. Sao noted swelling on the base of the right thumb and a scab that was at least three to four days old near the knuckle on the right thumb. Because the scab was on the top side of the hand, Dr. Sao believed the injury was more consistent with fighting than with falling. The injury could also have been caused by using the plastic inmate-manufactured weapon in a punching motion.

## DISCUSSION

Defendant contends that his trial counsel was ineffective for failing to file a third *Pitchess* motion seeking the same information he sought in the second *Pitchess* motion—personnel records of KVSP Officers Loza, Robles, Gurrola and Vera,

4.

Lieutenant David Balkind, and Sergeant Marvin Ventura as well as *Brady* material related to 11 officers, including some of the aforementioned officers. We disagree.

### A. *Pitchess* Framework

A *Pitchess* motion allows a criminal defendant to "compel the discovery" of information in police officer personnel files. (*People v. Superior Court (Johnson)* (2015) 61 Cal.4th 696, 710.) "Traditionally, *Pitchess* motions seek information about past complaints by third parties of excessive force, violence, dishonesty, or the filing of false police reports contained in the officer's personnel file." (*Rezek v. Superior Court* (2012) 206 Cal.App.4th 633, 641 (*Rezek*).)

*Pitchess* motions are governed by specific statutory procedures. (Evid. Code, §§ 1043–1045; §§ 832.5, 832.7, 832.8.) "The [written] motion must describe the type of records or information sought and include an affidavit showing good cause for the discovery, which explains the materiality of the information to the subject of the pending litigation and states on reasonable belief that the governmental agency has the records or information." (*People v. Superior Court (Johnson)*, *supra*, 61 Cal.4th at p. 710.)

> " 'A showing of "good cause" exists if the defendant demonstrates both (1) a "specific factual scenario" that establishes a "plausible factual foundation" for the allegations of officer misconduct [citations], and (2) that the misconduct would (if credited) be material to the defense [citation] …. Accordingly, defense counsel's supporting declaration must propose a defense and articulate how the requested discovery may be admissible as direct or impeachment evidence in support of the proposed defense, or how the requested discovery may lead to such evidence. [Citation.] Thus, a defendant meets the materiality element by showing (1) a logical connection between the charges and the proposed defense; (2) the requested discovery is factually specific and tailored to support the claim of officer misconduct; (3) the requested discovery supports the proposed defense or is likely to lead to information that will do so; and (4) the requested discovery is potentially admissible at trial. [Citation.]' " (*Rezek*, *supra*, 206 Cal.App.4th at pp. 639–640.)

**B. Additional Background**

Defendant's first *Pitchess* motion contained a declaration by counsel alleging that Loza and Lieutenant David Balkind "have been the subjects of ongoing investigations involving unspecified violations[.]" The motion contained the contention that "the reports of … Loza and … Balkind are incorrect or false." However, no evidence was submitted in support of that contention and no explanation was given regarding the way in which the reports were incorrect or false. At the hearing on the motion, defendant's counsel contended that "the reports of the officers in this case were plainly wrong. They provided supplemental declarations that contradicted the first findings during the initial investigation …." The trial court denied the motion without prejudice, noting that the motion was unsupported by evidence and that defendant's counsel had not submitted any exhibit suggesting that contradictory evidence was contained in the officers' reports.

Defendant's second *Pitchess* motion repeated the allegation that "the reports of … Loza and … Balkind are incorrect or false." The motion further alleged that Vera, Ventura, Gurrola, and Robles "provided the prosecution with additional statements which were in marked contrast to the ones provided in [their] original report[s]." The motion also alleged that Robles had "a level of familiarity with the … victim that was unknown to the defense[,]" had been charged with and acquitted of "[a]ssault by a public officer and making a false report[,]" and had been convicted of "driving under the influence … and [was] currently on probation for those charges [*sic*]." Defendant's counsel's declaration in support of the second motion alleged that "Lozano [*sic*] and … Balkind ha[d] been the subjects of ongoing investigations involving unspecified violations[,]" "Robles, Vera, Loza, Ventura[,] and Gurola [*sic*] have provided false reports in this

case[,]" and Robles was "on probation and was charged with assault and making a false report[.]" The trial court denied the second motion.[4]

On October 9, 2018, the *Pitchess* issue was revisited. Defendant's counsel explained that his client had discovered that administrative proceedings had been initiated against Balkind and perhaps other officers. Defendant's counsel further commented that information regarding Balkind had been released in response to a *Pitchess* proceeding in a different case. Defendant's counsel then commented that he "received information from … Vera, who indicate[d] that the report she had originally filed … was contradicted" and information suggesting that Robles was involved in an incident of excessive force in 2007. He summarized that he filed the *Pitchess* motions because he did not know whether the officers had been involved in administrative proceedings where allegations of misconduct were substantiated. He was "guessing that some of them [were] substantiated." He knew that the administrative proceedings against some officers existed and "wanted to know the nature of them" because it impacted the credibility of the witnesses. However, he did not allege "that there was any issue[] of dishonesty." At the end of the proceeding, the trial court suggested defendant's counsel—with the assistance of court staff—seek the trial court records of any case involving misconduct against Balkind or Robles, that the People review and redact the records, and that the People provide discovery to defendant.

On October 10, 2018, the parties disclosed that they had discovered a one-page probable cause declaration finding that Robles "assaulted a person who could not defend himself[] and then he lied" about the encounter in a report. The trial court afforded defendant an opportunity to seek a continuance to seek further discovery regarding the incident of excessive force. Defendant's counsel responded that his "client

---

[4]     The record does not contain a transcript from the hearing on defendant's second *Pitchess* motion.

7.

believes that it is not in his best interest … to continue the matter, and he wishes to proceed to trial." Defendant did not contradict his counsel's statement.

### C. Analysis

To establish ineffective assistance of counsel (IAC) defendant must show (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688; *People v. Ledesma* (1987) 43 Cal.3d 171, 216–217.) " 'Unless a defendant establishes the contrary, we shall presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." [Citation.] If the record "sheds no light on why counsel acted or failed to act in the manner challenged," an appellate claim of [IAC] must be rejected "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." ' " (*People v. Lopez* (2008) 42 Cal.4th 960, 966.) To establish prejudice, defendant must make a showing "sufficient to undermine confidence in the outcome" that but for counsel's errors there is a reasonable probability that the result of the proceeding would have been different. (*Strickland*, at p. 694; see *Ledesma*, at pp. 217–218.)

Here, the record undercuts defendant's contention that there is no satisfactory explanation for his trial counsel's failure to file a third *Pitchess* motion. Defendant's trial counsel stated on the record his reason for not filing a third *Pitchess* motion—his "client ha[d] been waiting almost exactly three years to vindicate himself in this case. [¶] … [¶] [His] client believe[d] that it [was] not in his best interest … to continue the matter, and he wishe[d] to proceed to trial." Even assuming a *Pitchess* motion may have been meritorious, counsel's stated reason for refusing to file a third *Pitchess* motion was a valid tactical decision.

8.

Next, defendant has not established that he suffered any prejudice as a result of his trial counsel's failure to file a third *Pitchess* motion. The record does not support any statement of a " 'specific factual scenario' " which could have established a " 'plausible factual foundation' " (*Rezek*, *supra*, 206 Cal.App.4th at p. 639) for the nonspecific allegations that Vera, Gurrola, and Ventura provided false information or made false reports.[5] A defendant disputing the facts set out in an officer's report is not sufficient to demonstrate good cause for a *Pitchess* motion. (*People v. Sanderson* (2010) 181 Cal.App.4th 1334, 1340–1341; *People v. Thompson* (2006) 141 Cal.App.4th 1312, 1317.) Here, the record does not support any foundation for the allegation that those officers submitted false reports. Instead, defendant's counsel's prior declarations and statements on the record merely alleged that those officers' reports were false. The record does not support an alternate version of the facts that supported his defense and therefore does not support a showing of good cause.

Even assuming defendant had prevailed on the motion and obtained evidence of excessive force, violence, dishonesty, or the filing of false reports from the personnel files of Loza, Balkind, and Robles, there is no reasonable probability that the result would have been different. Balkind did not testify and did not appear to have any role in the investigation of this case; Loza did not testify to any material information not provided by the other officers; and the court was aware of the allegation that Robles harmed an inmate and then later filed a false report to conceal the incident. Vera and Gurrola both witnessed defendant's attack on Simmons. Vera saw and took custody of the inmate-manufactured weapon before Loza arrived. Dr. Sao described Simmons' neck and chin injuries as including a "stab wound" and an "irregular shaped puncture" that

---

[5]     Defendant previously alleged that Loza submitted a report falsely describing the injuries to defendant and Robles had previously submitted a false report to conceal unwarranted or excessive use of force. No similar allegations were made regarding Vera, Gurrola, or Ventura.

were consistent with the weapon found near the fight.  Dr. Sao further described the inflammation and scabbing of defendant's right thumb as being more consistent with fighting than with defendant's explanation that he fell.

The trial court's description of the basis for its verdict is consistent with the conclusion that *Pitchess*-type evidence would not have impacted the verdict.  The trial court described "that the evidence in this case clearly establishe[d] … defendant's guilt.  We have three people[—Robles, Gurrola, and Vera—]who witnessed an assault by … defendant on another inmate.  [¶]  …  [W]e have the testimony of the medical doctor, who … testified that a weapon was used to … inflict[] [at least] one of the injuries.  A weapon was found in the vicinity of where the assault occurred.  And the defendant was noted to have injuries … on his right hand, and that would be, in this Court's opinion, consistent with the assault."  In sum, there is no reasonable likelihood that the trial court's verdict would have been different even if *Pitchess*-type evidence had been discovered regarding Robles, Loza, and Balkind.

## DISPOSITION

The judgment is affirmed.