Filed 7/26/22 P. v. Morales CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RICARDO CARRASCO MORALES,<br><br>    Defendant and Appellant. | F081405<br><br>(Super. Ct. No. DF014334A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County. Robert S. Tafoya, Judge.

Cynthia L. Barnes, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Harry Joseph Colombo, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

A jury convicted appellant Ricardo Carrasco Morales of felony possession of drug paraphernalia while in a penal institution (Pen. Code, § 4573.6, subd. (a);[1] count 2), along with misdemeanor driving on a suspended license (Veh. Code, § 14601.2, subd. (a); count 3).[2] For the felony, the trial court sentenced appellant to prison for the upper term of four years. For the misdemeanor, the court imposed a concurrent term of 180 days in county jail.

Prior to trial, appellant filed a *Pitchess* motion[3] to obtain information from the personnel file of the arresting police officer. The court denied that motion, which appellant contends was error. Appellant also asserts the lower court erred when it refused to dismiss the entire criminal action based on an alleged *Brady* violation.[4] We reject appellant's claims and affirm.

## BACKGROUND

### I. The Relevant Trial Evidence.

The prosecution established that, in April 2019, appellant was driving a vehicle with a suspended driver's license. He was stopped by a Delano police officer, Joshua Garcia, after Garcia observed appellant driving at night without headlights. Garcia also saw appellant cross a double yellow line. Shortly after stopping appellant, Garcia learned that appellant's driving privileges had been suspended. At some point that evening, another officer transported appellant to the Delano Police Department.

---

[1] All future statutory references are to the Penal Code unless otherwise noted.

[2] In count 1, appellant was charged with willfully bringing a device into a penal institutional intended for injecting or consuming a narcotic in violation of section 4573, subdivision (a). The jury was unable to reach a verdict in count 1, and a mistrial was declared.

[3] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

[4] *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*).

2.

The following morning a different Delano police officer, Pedro Mendoza, transported appellant from Delano to Bakersfield for booking. Mendoza searched appellant before placing him inside a patrol car. That search, however, only occurred below appellant's waistline and Mendoza did not search appellant's shirt pockets. At trial, Mendoza explained that, because appellant was already under arrest, another officer would have already searched appellant more thoroughly.[5]

Prior to entering the booking facility in Bakersfield, Mendoza twice asked appellant if he had any drug paraphernalia on him. Appellant twice stated, "No." Outside the front door to the booking center, a sign indicated that no drug paraphernalia was permitted inside.

At the booking center, a sheriff's deputy searched appellant and found a glass pipe in appellant's front shirt pocket. The recovered glass pipe had a "white residue" inside it, along with "burnt residence." At trial, Mendoza testified that, based on his experience and training, appellant's pipe had been used to ingest methamphetamine.

## II.     The Additional Facts Which the Jury did not Learn.

The jury did not learn that, on the night in question, appellant had been arrested on suspicion of driving under the influence (DUI) of alcohol. After Garcia pulled appellant over for a moving violation, Garcia suspected that appellant was under the influence of alcohol. That same night, another Delano police officer, Alfredo Castillo, was dispatched to the scene to conduct field sobriety tests. Appellant failed those tests with Castillo, who determined that appellant was under the influence of alcohol. It was Castillo who arrested appellant that night.

---

[5]     At trial, Mendoza acknowledged that he incorrectly wrote in his report that the deputy had located the pipe in appellant's shorts underneath his pants. Mendoza said that had been a misunderstanding. Mendoza denied moving the pipe from appellant's pants to appellant's shirt pocket.

**III. The *Pitchess* Motion Regarding Castillo's Personnel File.**

Prior to trial, appellant filed a *Pitchess* motion seeking all of Castillo's personnel records. Without providing specific details, the motion alleged that Castillo had fabricated evidence. In part, the motion cited *Brady* as grounds for disclosure of Castillo's personnel records.

In a supporting declaration, appellant's trial counsel alleged that, on the night in question, Garcia had stopped appellant's vehicle and Castillo had conducted a DUI investigation. Appellant had been arrested after Castillo concluded appellant had violated DUI laws. Mendoza transported appellant for booking, and a deputy sheriff at booking found a pipe on appellant's person.

Defense counsel alleged in his declaration that, "based on reliable sources," Castillo himself had either been investigated and/or arrested for DUI, and the Delano Police Department had discharged Castillo. Defense counsel asserted that Castillo's history was material to appellant's defense. According to defense counsel, "Castillo cannot be trusted" with DUI investigations because Castillo had also been investigated or arrested for DUI. Without explaining how, defense counsel stated that Castillo's version of events "is clearly different" from appellant's version of events. Finally, defense counsel declared that information from Castillo's personnel file was necessary to impeach Castillo.

In November 2019, the trial court heard appellant's *Pitchess* motion regarding Castillo's personnel file. The court stated that a prima facie showing had not been made. According to the court, just because Castillo had been convicted of a DUI did not mean Castillo was "incapable of observing what he observed." The court also noted that appellant had never denied possessing the drug paraphernalia. The court did not see how Castillo's personnel files were relevant. The court denied the *Pitchess* motion without prejudice.

4.

## IV.   The Alleged *Brady* Violation.

In February 2020, about three months after the *Pitchess* motion was denied, the trial court was alerted about a possible *Brady* violation. This issue came to light after trial had commenced, but before jury selection had started. This *Brady* issue is central to appellant's two claims on appeal.

It was represented to the court that Castillo (the officer who conducted the field sobriety tests and arrested appellant on the night in question) had in fact been arrested for a DUI on or about August 1, 2019. It was also disclosed to the court that Castillo had been the subject of an internal affairs (IA) investigation. This investigation involved a separate and unrelated incident to Castillo's alleged DUI conviction. The IA investigation stemmed from a felony hit-and-run that had occurred in July 2016. Castillo and his partner had investigated this hit-and-run, but they had treated it as a mere accident. Castillo had subsequently lied to the IA investigator by withholding facts regarding the actual events surrounding the hit-and-run in July 2016.

Defense counsel argued that this *Brady* material should have been provided to him long before trial. The defense asserted that a due process violation had occurred. Defense counsel asked the court to dismiss the entire case.[6] Defense counsel informed the court that it was the defense theory that Castillo had searched appellant, and Castillo had permitted appellant to retain possession of the pipe so it would be discovered at booking.[7]

Following the disclosure of this alleged *Brady* violation, the prosecutor dismissed the two DUI charges that were pending against appellant. The court denied the defense

---

[6]   In or about June 2019, the defense had made an informal discovery request in this matter.

[7]   At the preliminary hearing in this matter, Castillo had testified that he had arrested appellant on the night in question after appellant had failed the field sobriety tests. Castillo had transported appellant to an emergency room for a blood draw, and then to the Delano Police Department.

request to dismiss the remaining charges. According to the court, appellant had not suffered prejudice from any *Brady* violation because the charges involving Castillo had been dismissed. On the other hand, the court confirmed that, if the People did not dismiss the DUI charges, then it would permit the defense to subpoena Castillo to testify. The prosecutor confirmed that she was dismissing the DUI counts as part of a "strategic" decision and not as a remedy for any alleged due process violation.

The following day, the court learned from the parties that it was Castillo who had personally informed defense counsel that he had incurred a DUI and he had been terminated. A different prosecutor was previously in charge of this case, and it was the former prosecutor who had advised defense counsel to file a *Pitchess* motion regarding Castillo's personnel file.[8] The current prosecutor asserted to the court that she had turned over the *Brady* information promptly when it came to her attention. The current prosecutor noted that, if the defense wanted a continuation, the People would not oppose one. However, the prosecutor argued that the defense was not seeking a continuance and, instead, making a tactical decision to proceed.

The trial court expressed its concern about this new information involving Castillo. The court noted that the Delano Police Department had not alerted the court about this information during the prior *Pitchess* proceeding. The court, however, stated that the *Brady* material came to the defense's attention before trial started, and the People had decided to dismiss the DUI charges. The court reaffirmed its belief that appellant had not suffered prejudice.

Before the jury received evidence in this matter, the trial court held a series of hearings pursuant to Evidence Code section 402 (the section 402 hearings) to confirm that the prosecution could proceed on the remaining charges. Through the section 402

---

**8**     Thus, it appears that the former prosecutor in this matter was the "reliable" source of defense counsel's declaration in support of the *Pitchess* motion regarding Castillo's personnel file.

6.

hearings, the court determined that Castillo's testimony was not necessary for the prosecution to establish appellant's possession of the pipe at booking, or that appellant drove a vehicle with a suspended driver's license.

Before evidence was presented to a jury, defense counsel asked the court to reconsider an earlier suppression motion which the court had denied. The defense had previously argued that appellant had been improperly detained too long on the night he was arrested, and the defense had sought to suppress all evidence subsequently seized. The court acknowledged that this new information regarding Castillo could have impacted the court's earlier decision to deny the suppression motion. Thus, the court ordered Garcia to testify at another section 402 hearing to clarify the circumstances surrounding the traffic stop that led to appellant's arrest.

Following Garcia's subsequent testimony outside the presence of the jury, the court concluded that no error had resulted because Garcia had independently learned that appellant's license was suspended. As such, it did not matter how long it took for Castillo to arrive at the scene to conduct the field sobriety tests because Garcia had independent grounds to detain appellant for his misdemeanor driving on a suspended license. The court determined it was appropriate to proceed to trial.

## DISCUSSION

### I. The Trial Court did not Abuse its Discretion in Denying Appellant's *Pitchess* Motion and any Presumed Error is Harmless.

Appellant argues that the trial court prejudicially erred in denying his *Pitchess* motion regarding Castillo's personnel file. Appellant seeks reversal of his judgment.

### A. *Standard of review.*

An abuse of discretion standard is used to review a trial court's decision regarding a motion for discovery of peace officer personnel records. (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039, overruled on other grounds in *Facebook, Inc. v. Superior Court (Touchstone)* (2020) 10 Cal.5th 329, 345–346, fn. 6.) Under this

7.

standard, a trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9–10.)

### B. Analysis.

Appellant asserts that, because his *Pitchess* motion raised the possibility of *Brady* material contained in Castillo's files, the trial court could not have denied the motion and it was obligated to conduct an in camera review.[9] We disagree. The trial court did not abuse its discretion. In any event, we conclude that any presumed error was harmless.

### 1. The trial court did not abuse its discretion.

In some circumstances, a criminal defendant may gain access to a law enforcement officer's personnel file. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1219.) In a *Pitchess* motion, a defendant must describe the type of records or information sought, and include affidavits showing good cause for the discovery or disclosure sought.[10] (*People v. Mooc, supra,* at p. 1226.) The defendant must set forth the materiality of the requested information to the subject matter involved in the pending litigation. (*Ibid.*) The affidavits may be based on information and belief, and need not be based on personal knowledge. (*Ibid.*) However, the information sought must be requested "with sufficient

---

[9] Under *Brady* and its progeny, the prosecution must disclose evidence that is favorable to an accused. This encompasses impeachment evidence as well as exculpatory evidence. (*Strickler v. Greene* (1999) 527 U.S. 263, 280.) In *Brady*, the high court held that the prosecution's suppression of favorable evidence to an accused upon request violates due process, irrespective of the prosecution's good or bad faith, if the evidence is material to either guilt or punishment. (*Brady, supra,* 373 U.S. at p. 87.) The defendant has the burden of showing materiality. (*In re Sassounian* (1995) 9 Cal.4th 535, 545.)

[10] "*Pitchess, supra,* 11 Cal.3d 531, and its statutory progeny are based on the premise that evidence contained in a law enforcement officer's personnel file may be relevant to an accused's criminal defense and that to withhold such relevant evidence from the defendant would violate the accused's due process right to a fair trial." (*People v. Mooc, supra,* 26 Cal.4th at p. 1227.)

specificity" to preclude a possibility a defendant is "simply casting about for any helpful information." (*Ibid.*) A defendant must demonstrate a logical link between any proposed defense and the pending charge, and describe with some specificity how the sought discovery would impeach the officer's version of events or support such a defense. (*People v. Superior Court (Johnson)* (2015) 61 Cal.4th 696, 720 (*Johnson*).) A specificity requirement excludes requests for confidential information that are irrelevant to the pending charges. (*Id.* at pp. 720–721.)

As appellant notes in his briefing, a *Pitchess* motion may be used to obtain *Brady* material contained in a police officer's confidential personnel file.[11] (*Johnson*, *supra*, 61 Cal.4th at pp. 705–706.) In fact, because the *Pitchess* process operates in parallel with *Brady*, a trial court must disclose all information that is exculpatory and material under *Brady*. (*Johnson*, *supra*, 61 Cal.4th at p. 720.) However, when a *Pitchess* motion involves a request for potential *Brady* material, a defendant must provide some explanation to the trial court regarding how the officer's credibility might be relevant to the proceeding. (*Johnson*, *supra*, 61 Cal.4th at p. 721.)

In *Serrano v. Superior Court* (2017) 16 Cal.App.5th 759 (*Serrano*), an opinion which appellant cites, the prosecutor advised the defense to file a *Pitchess* motion because the sole arresting officer in the case potentially had *Brady* material in his

---

[11] "Under *Brady*, evidence is 'material' only if it is reasonably probable a prosecution's outcome would have been different had the evidence been disclosed. [Citation.] By contrast, '[u]nder *Pitchess*, a defendant need only show that the information sought is material "to the subject matter involved in the pending litigation." [Citation.] Because *Brady*'s constitutional materiality standard is narrower than the *Pitchess* requirements, any [information] that meets *Brady*'s test of materiality necessarily meets the relevance standard for disclosure under *Pitchess*. [Citation.]' [Citation.] [¶] 'This procedural mechanism for criminal defense discovery, which must be viewed against the larger background of the prosecution's constitutional obligation to disclose to a defendant material exculpatory evidence so as not to infringe the defendant's right to a fair trial [citations], is now an established part of criminal procedure in this state.' " (*Johnson*, *supra*, 61 Cal.4th at pp. 711–712.)

personnel file. Defense counsel made such a representation to the trial court, and counsel's declaration explained that the deputy in question was the sole witness for the prosecution regarding all charges. Counsel asserted that the deputy's credibility was material both at trial and for a motion to suppress evidence. Depending on what existed in the deputy's personnel file, any potential *Brady* evidence could be used to impeach the deputy. (*Serrano*, *supra*, 16 Cal.App.5th at p. 774.) The *Serrano* court concluded that defense counsel's declaration had been sufficient to trigger an in camera review of the deputy's personnel file. (*Ibid.*)

Appellant asserts that, like in *Serrano*, his counsel's declaration in this matter should have been enough to require an in camera review of Castillo's personnel file. We disagree.

The declaration in support of appellant's motion failed to set forth a specific, factual scenario. The declaration generally stated that Castillo had fabricated evidence. However, there was no explanation for that assertion. The motion also claimed that Castillo "cannot be trusted" in conducting a DUI investigation because Castillo had been arrested or convicted of a DUI. However, there was no explanation how Castillo's prior DUI would support a defense. Appellant's *Pitchess* motion did not elucidate how Castillo's credibility might be relevant to the proceeding. Appellant failed to demonstrate a logical link between any proposed defense and the pending charges. Appellant also failed to describe with any specificity how the sought discovery would impeach Castillo's version of events or support such a defense. (*Johnson*, *supra*, 61 Cal.4th at pp. 720–721.)

Unlike in *Serrano*, appellant's *Pitchess* motion did not assert that the prosecution had advised the defense to file the motion and seek potential *Brady* material in Castillo's personnel file. Instead, appellant's motion claimed that Castillo had suffered his own prior DUI conviction, which made him unfit to conduct the DUI investigation in this matter. The trial court reasonably expressed concern that appellant failed to demonstrate

10.

how the requested information was relevant to the pending charges. Moreover, unlike what occurred in *Serrano*, Castillo was not the sole witness against appellant. Appellant's *Pitchess* motion did not explain how Castillo's personnel records would be material to the drug paraphernalia charges. As the trial court noted, appellant never denied possessing the pipe. *Serrano* is distinguishable and it does not establish that reversal is required.

After reviewing this record, we reject appellant's assertion that the trial court used the wrong standard in denying the *Pitchess* motion. Appellant failed to make an adequate showing of good cause for the trial court to grant the *Pitchess* motion and conduct an in camera review. The court explained that it did not see a connection between Castillo's confidential personnel file and the pending charges. We cannot state that the court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. Thus, an abuse of discretion did not occur, and this claim fails. In any event, we also determine that any presumed error was harmless.

### 2. Any presumed error was harmless.

Appellant asserts that the various police officers must have left the pipe in his shirt pocket so he would receive a more serious charge when he was searched at the time of booking. He contends the suppression of the *Brady* material in Castillo's personnel file was prejudicial to his defense. We disagree.

The state standard of *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*) is used to analyze prejudice following the denial of a *Pitchess* motion. (*People v. Samuels* (2005) 36 Cal.4th 96, 110; *People v. Marshall* (1996) 13 Cal.4th 799, 842–843.) Under *Watson*, reversal is required if it is reasonably probable the result would have been more favorable to the defendant had the error not occurred. (*People v. Guiton* (1993) 4 Cal.4th 1116, 1130.)

A federal constitutional error is reviewed for prejudice under the standard articulated in *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*). (*People v.*

11.

*Aranda* (2012) 55 Cal.4th 342, 367.) Under the *Chapman* standard, a constitutional error is harmless when the reviewing court determines beyond a reasonable doubt that the error did not contribute to the verdict. (*People v. Aranda*, *supra*, 55 Cal.4th at p. 367.)

Here, it is not reasonably probable appellant would have received a more favorable result had the defense received the *Brady* material sooner. We can also declare beyond any reasonable doubt that any alleged error did not contribute to the verdicts. As such, any presumed error was harmless under either applicable standard.

Prior to the jury being selected, the potential *Brady* violation was brought to the trial court's attention. The prosecutor dismissed the pending DUI charges. Only three counts were at issue when this matter went to the jury, and none of those charges involved Castillo.

During closing argument, the defense asserted to the jurors that appellant had not tried to sneak the pipe into the secured area at the time of his booking. Instead, the defense took the position that officers had searched appellant before he went to booking, and one or more officers must have found the pipe. The officers, however, permitted appellant to keep the pipe. Defense counsel asked the jury to find appellant not guilty.

After hearing the trial evidence and defense counsel's arguments, the jury could not reach a verdict in count 1, and a mistrial was declared. In relevant part, count 1 had alleged that appellant willfully and knowingly brought into the sheriff's office a device intended to be used for injecting or consuming a narcotic. Although it was unable to reach a verdict in count 1, the jury convicted appellant in count 2 of possessing drug paraphernalia in a penal institution in violation of section 4573.6. In count 3, the jury convicted appellant of misdemeanor driving on a suspended license in violation of Vehicle Code section 14601.2.

A review of this record amply demonstrates that, even if error occurred and the *Brady* material should have been disclosed at or near the time of the *Pitchess* motion regarding Castillo's personnel files, prejudice did not result under either the state or

federal standards. The DUI charges involving Castillo were dismissed. Appellant was able to argue to the jurors that the officers permitted appellant to keep the pipe on him when he was taken to booking. Based on the mistrial in count 1, it is apparent that the jury carefully considered the evidence. The jury, however, concluded that appellant had knowingly possessed the pipe when he was booked. Castillo's credibility had no bearing on whether appellant possessed the pipe when he was booked, or whether he drove on a suspended license. We can declare that any error in the denial of the *Pitchess* motion was harmless. Consequently, appellant's arguments are without merit, and reversal is not required.

## II. The Trial Court Did Not Err in Denying a Motion to Dismiss the Entire Matter and any Presumed Error was Harmless.

Appellant contends that his judgment must be reversed because the trial court did not dismiss the entire criminal matter after the alleged *Brady* violation was revealed. We disagree. The trial court did not err and any presumed error was harmless.

### A. *The trial court did not err.*

A trial court has broad discretion to fashion a remedy in the event a discovery abuse occurs. (*People v. Bowles* (2011) 198 Cal.App.4th 318, 325.) "We generally review a trial court's ruling on matters regarding discovery under an abuse of discretion standard." (*People v. Ayala* (2000) 23 Cal.4th 225, 299.)

We conclude that the trial court did not abuse its discretion or otherwise err in permitting the prosecution to proceed on the charges that did not involve Castillo. After the alleged *Brady* violation came to light, the court engaged in a prolonged discussion with the parties regarding how the late disclosure would impact the trial. Before the jury received evidence in this matter, the trial court held a series of section 402 hearings. Through the section 402 hearings, the court confirmed that Castillo's testimony was not necessary for the prosecution to establish appellant's possession of the pipe at booking, or that appellant drove a vehicle with a suspended driver's license.

13.

We discern no error regarding how the court handled the late disclosure of the *Brady* information regarding Castillo. The court carefully considered the pending charges in light of the new information. The court gathered evidence through the section 402 hearings to ascertain whether or not Castillo was a necessary witness for the remaining charges. The court determined that the new information would not have altered its prior denial of appellant's suppression motion. In light of the prosecution dismissing the DUI charges that involved Castillo, the court determined that appellant had not been prejudiced and a full dismissal of the criminal matter was not warranted.

Based on this record, the trial court did not abuse its discretion or otherwise err when it declined to dismiss the entire criminal matter. We reject appellant's arguments to the contrary. "In sum, no constitutional violation or other error has been shown." (*People v. Jenkins* (2000) 22 Cal.4th 900, 952.) Consequently, reversal of the judgment is not warranted, and this claim fails. In any event, we find any presumed error harmless.

### B.      Any presumed Brady violation was harmless.

A defendant is entitled to a new trial if the "net effect" of the withheld evidence raises "a reasonable probability" that a different result would have occurred with disclosure. (*Kyles v. Whitley* (1995) 514 U.S. 419, 421–422.) " 'A reasonable probability does not mean that the defendant "would more likely than not have received a different verdict with the evidence," only that the likelihood of a different result is great enough to "undermine[] confidence in the outcome of the trial." ' " (*Association for Los Angeles Deputy Sheriffs v. Superior Court* (2019) 8 Cal.5th 28, 40, quoting *Smith v. Cain* (2012) 565 U.S. 73, 75.)

A *Brady* violation does not occur if the disputed evidence is presented at trial. (*People v. Verdugo* (2010) 50 Cal.4th 263, 281; *People v. Morrison* (2004) 34 Cal.4th 698, 715.) Likewise, information that is disclosed in advance of trial is not considered suppressed, even if it should have been provided earlier to the defense. (*People v. Superior Court (Meraz)* (2008) 163 Cal.App.4th 28, 51.)

Here, the information regarding Castillo came to the defense's attention before the jury was selected. Moreover, the prosecution dismissed the DUI charges that were impacted by this late disclosure. Thus, this record does not demonstrate a true suppression of *Brady* material and our confidence in this matter is not undermined regarding the outcome of this trial. Castillo was not a material witness regarding appellant's possession of the pipe at booking. Castillo did not transport appellant from Delano to the booking facility in Bakersfield, and Castillo was not present when the deputy found the pipe in appellant's shirt pocket. Castillo also had no involvement regarding Garcia's observation that appellant had operated a vehicle on a suspended driver's license. The "net effect" of the withheld evidence does not raise "a reasonable probability" that a different result would have occurred if the information about Castillo had been disclosed sooner. (*Kyles v. Whitley*, *supra*, 514 U.S. at pp. 421–422.) Therefore, even if a *Brady* violation occurred, any presumed error was harmless. This claim is without merit and reversal is not required.

## DISPOSITION

The judgment is affirmed.

LEVY, ACTING P. J.

WE CONCUR:

FRANSON, J.

PEÑA, J.

15.